■ KOSTAS MOUSTAKAS et al., Respondents, v NICHOLAS BOULOUKOS et al., Defendants and Third-Party Plaintiffs-Appellants, et al., Defendants. MARK DO MOWNE, Third-Party Defendant-Respondent.—In an action, *inter alia,* for rescission of a stipulation of settlement of certain lawsuits, defendants Nicholas Bouloukos and Seacrest Diner, Inc., appeal from a judgment of the Supreme Court, Nassau County (Levitt, J.), entered October 13, 1983, which, *inter alia,* granted rescission of the settlement agreement and vacated stipulations of discontinuance of the prior actions executed pursuant thereto.

Judgment affirmed, with costs to plaintiffs-respondents.

In this action, plaintiffs sought rescission of a certain agree-

ment, dated December 15, 1980, which purported to settle three lawsuits then pending in the Supreme Court, Nassau County, involving the parties herein. The primary issue is whether that agreement, and certain ancillary agreements made pursuant thereto, are void because plaintiffs' attorney of record in the prior actions, who had not been discharged in the manner prescribed by statute (CPLR 321 [b]), was neither present nor consulted during the negotiation and execution of the agreement which purported to settle those actions.

The pertinent facts, as determined by the trial court, are that Kostas Moustakas and Nicholas Bouloukos were both 50% shareholders in each of two corporations, Imperial Diner, Inc. (hereinafter Imperial) and Seacrest Diner, Inc. (hereinafter Seacrest). In 1980 a dispute arose between Moustakas and Bouloukos and, as a result, three separate lawsuits were commenced in the Supreme Court, Nassau County; the first, a special proceeding by Moustakas for the dissolution of Seacrest; the second, a shareholder's derivative action by Moustakas against Bouloukos and Seacrest; and the third, a shareholder's derivative action by Bouloukos against Moustakas and Imperial. Mark J. Heller, Esq., was the attorney of record for Moustakas and Imperial in the foregoing actions and Joel Levy, Esq., appeared as attorney of record for Bouloukos and Seacrest in those same actions.

On November 17, 1980, approximately one month prior to the subject settlement agreement, plaintiff Moustakas attempted to discharge Heller as the attorney of record for himself and Imperial by delivering to Heller a handwritten letter terminating his services. Thereafter, Moustakas and his business advisor Mark Do Mowne, who was not an attorney, met with Bouloukos and his attorney, Levy, on several occasions. As a result of these meetings, an agreement encompassing a settlement of all pending litigation was negotiated, and a formal written settlement agreement was then drafted by Levy. On December 15, 1980, the written agreement was executed by Moustakas, personally and in his capacity as president of Imperial, and by Bouloukos, personally and in his capacity as president of Seacrest. However, Heller was not apprised of the purported settlement until he received a letter from Levy, dated February 24, 1981, requesting that he (Heller) make arrangements for proper filing of the stipulations of discontinuance. Significantly, Levy's letter referred to Moustakas as Heller's "client".

Under these circumstances, we conclude that the trial court correctly rescinded the settlement agreement and the ancil-

lary agreements made pursuant thereto. Although a client may, as a matter of public policy, discharge an attorney at any time, with or without cause (*Demov, Morris, Levin & Shein v Glantz,* 53 NY2d 553, 556), an attorney of record in an action may only withdraw or be changed or discharged in the manner prescribed by statute (*see,* CPLR 321 [b]; *Hess v Tyszko,* 46 AD2d 980; *Hendry v Hilton,* 283 App Div 168; 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 321.07). We are also mindful of Code of Professional Responsibility, DR 7-104 (A) (1), which generally prohibits an attorney, in the course of his representation of a client, from communicating on the subject of that representation with a party whom he knows to be represented by an attorney in that matter.

Thus, the mere delivery of the letter from Moustakas to Heller on November 17, 1980, did not effectively discharge the latter, who was then attorney of record in the three pending actions, because no duly executed consent to the change had been filed and served (CPLR 321 [b] [1]), or, alternatively, no court order granting such change had been made (CPLR 321 [b] [2]). Therefore, because Moustakas had appeared in the pending actions by an attorney and had not thereafter discharged that attorney in the manner prescribed by law, he could not act in person in those actions by settling them without the consent of the court (CPLR 321 [a]; *Johnson v Antonopoulos,* 213 App Div 324). Similarly, we note that Moustakas could not appear on behalf of Imperial to settle any action as against it, because Imperial, as a corporate party, could only appear by an attorney (*see,* CPLR 321 [a]). Further, because Moustakas had not legally discharged the lawyer for himself and Imperial, that lawyer continued as attorney of record, and it was therefore improper for any attorney representing another party to communicate with Moustakas personally regarding the subject matter of the pending lawsuits (Code of Professional Responsibility, DR 7-104 [A] [1]).

Until an attorney of record withdraws or is changed or discharged in the manner prescribed by CPLR 321, his authority as attorney of record for his client continues, as to adverse parties, unabated (*Blondell v Malone,* 91 AD2d 1201; *Hess v Tyszko,* 46 AD2d 980, *supra; Hendry v Hilton,* 283 App Div 168, *supra*). This principle has generally been applied to afford protection to adverse parties, by eliminating disputes and uncertainty as to whether and when the authority of an attorney representing an opponent terminated. For example, in *Blondell v Malone (supra),* defendant sought an order

permitting discovery after plaintiff had filed a statement of readiness. In support of the motion, defendant claimed that plaintiff's counsel had improperly served the statement of readiness on defendant's counsel after having been apprised that defendant would be retaining another attorney. The Appellate Division, Fourth Department, rejected this argument and held, *inter alia,* that because defendant's attorney of record had not been changed by court order or stipulation in accordance with CPLR 321 (b), service by plaintiff of the statement of readiness upon that attorney was proper.

In this case, however, the circumstances are somewhat different. Here, the plaintiffs rely on CPLR 321 as a means of avoiding the consequences of Moustakas' own decision to discharge their attorney and proceed without counsel. Although the statute has generally been construed to establish the authority of discharged counsel as to adverse parties and not as to the very party who discharged the attorney, the language of the statute makes no such distinction, and therefore, the statute should apply under the circumstances of this case as well. In our view, CPLR 321 not only protects adverse parties; it has the further salutary purpose of protecting parties from attorneys who represent other parties in the action.

We need not reach the question of whether the trial court was bound, under the doctrine of law of the case, by an intermediate order in the action (Wager, J.), which held, *inter alia,* that CPLR 321 was inapplicable to the case. "Even if the doctrine of law of the case would have been applicable at Special Term * * * it has no applicability to this appellate court" (*Barry v Good Samaritan Hosp.,* 86 AD2d 853, 854, *revd on other grounds* 56 NY2d 921; *see also, Martin v City of Cohoes,* 37 NY2d 162, 165). Lazer, J. P., Bracken, Weinstein and Niehoff, JJ., concur.