OPINION OF THE COURT
David Goldstein, J.
In this legal malpractice action, defendants Albanese, Albanese & Fiore, a partnership, and Albanese, Albanese & Fiore, P. C., seek an order granting summary judgment dismissing the complaint and, in the alternative, seek partial summary judgment dismissing plaintiff’s claim for lost profits. Codefendants, Suozzi, English, Cianciulli & Peirez, P. C., and Suozzi, English & Cianciulli, P. C., cross-move for summary judgment dismissing the complaint and, in the alternative, for partial summary judgment, dismissing plaintiff’s claim for lost profits. Codefendant Kate Shapiro, as executrix of the estate of J. Irwin Shapiro, deceased, also cross-moves for summary judgment dismissing the complaint and, in the alternative, for partial summary judgment, dismissing plaintiff’s claim for lost profits.
*794 This action for legal malpractice arises out of defendants’ representation of plaintiff, Leon R. DaSilva, in two underlying actions for specific performance of a binder agreement for the sale of an apartment building.
In 1978, plaintiff had executed a binder agreement to purchase an apartment building for the sum of $641,000, from Antonio Musso and Chris Partridge. When the owners reneged on the binder agreement, Mr. DaSilva’s then counsel filed a notice of pendency pursuant to CPLR article 65, and commenced an action in the Supreme Court, Queens County, for specific performance and, in the alternative, damages. The Supreme Court (Graci, J.) after a nonjury trial, by a judgment dated October 25, 1979, granted plaintiff specific performance of the binder agreement. The sellers appealed to the Appellate Division, Second Department, which, on June 16, 1980, reversed and dismissed the complaint. (Da Silva v Musso, 76 AD2d 879.)
Thereafter, DaSilva promptly filed an appeal with the Court of Appeals on July 23, 1980, but did not obtain a stay of the Appellate Division order, pursuant to CPLR 5519. On November 7, 1980, DaSilva executed a consent to change attorneys, whereby Suozzi, English, Cianciulli & Peirez, P. C. (hereinafter Suozzi, English) was substituted as counsel. Defendant J. Irwin Shapiro, now deceased, was of counsel to Suozzi, English, and is alleged to have represented plaintiff on behalf of the law firm. Following substitution of counsel, the sellers sought to cancel the notice of pendency pursuant to CPLR 6514 (a). The Supreme Court (Buschmann, J.), in a decision dated February 10, 1981, and order dated February 27, 1981, granted the sellers’ motion to cancel the notice of pendency, as plaintiff had not obtained a stay of the Appellate Division’s order of June 10, 1980. This order was served on plaintiff, together with notice of entry on March 3, 1981, and plaintiff never sought to reargue or appeal said order. The sellers, Musso and Partridge, shortly thereafter, contracted to sell the property to Ross Howard Realty Corp., for the sum of $850,000 which, in turn, assigned the contract to Uzi Realty Corp., as agent for Sun Place Realty Corp., for the sum of $1,005,000. On May 19, 1981, DaSilva executed a consent to change attorneys, whereby defendants Albanese, Albanese & Fiore (hereinafter AA&F) was substituted as counsel for Suozzi, English. AA&F promptly notified the prospective purchasers of the pending appeal. Nonetheless, the transaction was consummated, and the property was conveyed to Sun Place *795 Realty on September 1, 1981, some nine days before the plaintiffs appeal was argued. The argument went forward as scheduled and, on October 20, 1981, the Court of Appeals issued a decision and order reversing the Appellate Division and reinstating the trial court’s judgment which had awarded specific performance. (Da Silva v Musso, 53 NY2d 543.) The Court of Appeals specifically noted that "[i]t was error also to dismiss the complaint and thus, in effect, by foreclosing plaintiffs recovery of damages (demanded as an alternative remedy in the complaint), to grant defendants rescission” (supra, at 551). The foregoing proceedings shall be referred to hereinafter as Da Silva I.
Mr. DaSilva thereafter commenced a second action (Da Silva II) which sought, inter alla, to declare the conveyance to Sun Realty void, and to award him specific performance of the binder agreement. The Supreme Court (Kassoff, J.), in a memorandum decision, dated November 29, 1985, and judgment entered subsequent thereto, cancelled the deed transferring the property to Sun Realty, granting plaintiff specific performance. Plaintiffs claim for restitution was denied, as plaintiff did not seek such relief in the action for specific performance, and had not been awarded damages by the Court of Appeals. The Appellate Division, in a decision and order dated September 11, 1989 modified the judgment, and otherwise affirmed the cancellation of the deed and the award of specific performance. (Da Silva v Musso, 150 AD2d 73.) Both the Appellate Division and the trial court had found that, as the subsequent purchaser had actual knowledge of the then pending litigation, it was not a bona fide purchaser for value, even though the notice of pendency had been cancelled prior to the purchaser’s negotiations with the vendor for the sale of the property. In interpreting the provision of CPLR 6514 (a), therefore, both the appellate and trial courts concluded that a purchaser who buys real property with actual knowledge of the pendency of an appeal in an action for specific performance takes title subject to the right of the appellant as ultimately determined by the appellate court. Thus, the Appellate Division rejected plaintiffs claim for an accounting, as he had previously obtained such relief.
In early 1988, plaintiff sought to enforce the November 19, 1981 judgment of remittitur, and the October 19, 1979 judgment of specific performance. The Supreme Court, in an order dated May 5, 1988, directed specific performance, and directed that the sellers account to plaintiff for the net rents and *796 profits from October 15, 1978 to September 1, 1981, and the net proceeds of the sale to Sun Place Realty on September 1, 1981. The Supreme Court order was affirmed by the Appellate Division (Da Silva v Musso, 153 AD2d 836) and no further appeal was taken.
As noted, the Appellate Division’s order of September 11, 1989 was appealed by the sellers, and on June 12, 1990, the Court of Appeals reversed (Da Silva v Musso, 76 NY2d 436). The Court of Appeals, interpreting CPLR 6514 (a) and 5523, held that, following the cancellation of the notice of pendency, "the purchaser’s actual knowledge of a pending appeal is not legally significant and that, in the absence of an outstanding valid notice of pendency, the owner’s ability to transfer clear title to the disputed property remains unimpaired.” (76 NY2d, at 438, supra.) The Court further held, "[i]n cases where a postjudgment motion to cancel the notice of pendency has been made, the plaintiff must satisfy the conditions of CPLR 6514 (a) by showing either that the time for appealing has not yet expired or that an order staying the judgment’s enforcement has been issued under CPLR 5519. If neither of these conditions is met and the notice of pendency is cancelled, as the statute mandates, the plaintiff can claim no further interest in the property itself and cannot acquire any such interest by virtue of the purchaser’s actual knowledge of the pending appeal. Such a plaintiff must content itself with the remedies afforded by CPLR 5523, i.e., restoration of the value or purchase price already paid, in the event of an appellate reversal.” (Supra, 76 NY2d, at 444.) The Court of Appeals went on to note that, as plaintiff had neglected to obtain a CPLR 5519 stay pending appeal, the notice of pendency was properly cancelled and his right to a direct interest in the subject property was lost. "Consequently, he cannot now complain because this court’s order restoring the trial court’s judgment for specific performance can no longer be enforced and he is relegated to other remedies that are less satisfactory to him”. (Supra, at 444.) Thus, the Court of Appeals reversed the Appellate Division, and granted judgment in favor of the sellers, declaring that the deed which had transferred ownership of the subject real property to Sun Place Realty was valid, and that plaintiff had no claim to ownership, possession or use of the property. The Court of Appeals determination made no provision for monetary damages in favor of plaintiff. Plaintiff’s then counsel, AA&F, thereupon, moved to amend the remittitur, so as to permit plaintiff to recover money *797 damages, which motion was denied as untimely on November 20, 1990. (Da Silva v Musso, 76 NY2d 959.)
Subsequent to the foregoing, plaintiff commenced the within action for legal malpractice and breach of contract on March 6, 1991. It is alleged that the defendants negligently failed to obtain a stay of the Appellate Division order in Da Silva I, thereby permitting the notice of pendency to be cancelled. It is asserted that, as a result, defendants’ acts deprived plaintiff of the right to specific performance of the binder agreement, and the alternative relief of money damages. It is further asserted that defendant AA&F negligently failed to seek such a stay and to reinstate the notice of pendency. Further, plaintiff claims that AA&F’s untimely motion to amend the remittitur deprived him of the right to recover money damages from the sellers. He now seeks to recover damages of $20 million, which includes the loss of the bargain and the loss of future profits. He further seeks to recover $160,000 paid to defendants for legal services rendered in the two underlying actions. Defendants have answered the complaint, issue having been joined on April 30, 1991.
Defendants AA&F now move for summary judgment dismissing the complaint and, in the alternative, seek partial summary judgment dismissing the claim for lost profits. Codefendants Suozzi, English, and Shapiro each cross-move for the identical relief. It is contended that the defendants’ actions do not constitute legal malpractice. Moreover, defendant AA&F asserts that it cannot be legally responsible for actions which occurred prior to its representation of plaintiff. Nor, according to defendants, may plaintiff, as a matter of law, recover damages for future lost profits, which they claim is speculative.
It is well settled that, in order to establish a prima facie case of legal malpractice, the plaintiff must show that, but for the negligent handling of his or her case, plaintiff would have prevailed in the underlying action. (Kerson Co. v Shayne, Dachs, Weiss, Kolbrenner, Levy & Moe Levine, 45 NY2d 730, affd on concurring mem of Mr. Justice Suozzi 59 AD2d 551, 552; Galizi v Mazin, 161 AD2d 419, 420; Pacesetter Communications Corp. v Solin & Breindel, 150 AD2d 232, 234.) Plaintiff’s claim for breach of contract is similarly founded upon the alleged failure to exercise due care in the performance of a contract. These claims, therefore, require identical proof of the deviation of the standard of care, causation, and damages. *798 (See, Febesh v Elcejay Inn Corp., 157 AD2d 102; see also, Campagnola v Mulholland Minion & Roe, 76 NY2d 38.)
An attorney cannot be liable for alleged acts of malpractice which did not occur during his or her representation of the plaintiff. (Santamarina v Citrynell, 203 AD2d 57; Sherotov v Capoccia, 161 AD2d 871.) The court, at the outset, finds that the evidence submitted establishes that Suozzi, English represented plaintiff in Da Silva I from November 7, 1980 to May 18, 1981, and that AA&F represented plaintiff in Da Silva I and Da Silva II from May 18, 1981 through November 1990, or later. J. Irwin Shapiro, deceased, was of counsel to Suozzi, English and, therefore, in the absence of any proof to the contrary, is deemed to have represented plaintiff for the same period of time as Suozzi, English. Contrary to plaintiff’s initial assertions, there is no basis in law for a "de facto” representation by counsel. An attorney of record can only be changed by filing with the clerk a consent signed by the retiring attorney and acknowledged and signed by the party. (CPLR 321 [b]; Vitale v City Constr. Mgt. Co., 172 AD2d 326; Hawkins v Lenox Hill Hosp., 138 AD2d 572; Moustakas v Bouloukos, 112 AD2d 981; Hess v Tyszko, 46 AD2d 980.) Plaintiff now concedes that the dates set forth in the consent to change attorney forms are correct, and that he was represented by Suozzi, English until May 18, 1981, and that thereafter he was represented by AA&F, beginning on May 19, 1981.
The court finds that, as a matter of law, plaintiff may not maintain a cause of action against defendant AA&F for legal malpractice and breach of contract. The evidence presented establishes beyond dispute that, following the Appellate Division’s order of June 16, 1980, which dismissed the complaint in Da Silva I, codefendants, Suozzi, English and Shapiro, became counsel to plaintiff. These defendants’ failure to obtain a stay of the Appellate Division’s order, pursuant to CPLR 5519, resulted in the mandatory cancellation of the notice of pendency pursuant to CPLR 6514 (a), on February 27, 1981. Moreover, the 30-day time period in which to appeal or reargue the February 27, 1981 order expired on April 3, 1981. AA&F was not retained and substituted as counsel until a month and a half later and, therefore, cannot be liable for errors, omissions or events occurring prior to their retention, nor for damages flowing from the cancellation of the notice of pendency and the ultimate sale of the property. (See, Hunt v Kolken, 49 AD2d 747, affd 40 NY2d 949; see also, Santamar *799 ina v Citrynell, 203 AD2d 57, supra; Sherotov v Capoccia, 161 AD2d 871, supra.)
Plainly, at the time AA&F was retained, there was no legally viable mechanism available to prevent the sale of the property. An attorney is not guilty of malpractice for failing to assert claims that are not cognizable at law. (See, McGee & Gelman v Park View Equities, 187 AD2d 1012, 1013-1014.) Once a notice of pendency is cancelled, successive notices of pendency may not be filed, and the plaintiff loses the special privileges afforded under CPLR article 65. (See, Chiulli v Reiter, 173 AD2d 672; Slutsky v Blooming Grove Inn, 147 AD2d 208; Gargano v Rubin, 130 AD2d 709; Holiday Investors Corp. v Breger & Co., 112 AD2d 979.) A plaintiff cannot avoid the mandatory statutory requirements of CPLR 6514 (a) and 5519 simply by filing a new notice of pendency. Furthermore, there is no provision in CPLR article 65 for reinstatement of a cancelled notice of pendency. Thus, the Court of Appeals in Da Silva II (76 NY2d 436, supra) made it clear that a plaintiff who fails to obtain a stay prior to the cancellation of the notice of pendency cannot thereafter reinstate or refile a notice of pendency. (See also, Matter of Vetri, 208 AD2d 755; McLaughlin, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C6514:l, 1995 Pocket Part, at 144.)
Moreover, the fact that AA&F did not seek a preliminary injunction to enjoin the enforcement of the Appellate Division order, therefore, does not constitute legal malpractice. Plaintiff has failed to establish that such an application had merit and that it would have been granted in any event. Moreover, once the notice of pendency had been cancelled, it could not have been restored by means of a preliminary injunction. Provisional remedies clearly cannot be utilized in order to circumvent the statutorily proscribed procedures for continuing a previously filed notice of pendency. This is clear from the language of the statute (CPLR 6514 [a]) and from the language in Da Silva II.
Plaintiff’s loss occurred when the notice of pendency was cancelled, at which time plaintiff irrevocably lost his right to restrain the alienability of the property pending appeal. (Da Silva v Musso, 76 NY2d 436, supra.) This loss occurred while plaintiff was represented by Suozzi, English and Shapiro. Plaintiff, thus, has not demonstrated that he sustained any injury during the time he was represented by AA&F. Therefore, the codefendants may not maintain any claims against *800 AA&F for contribution. (See, Hart v Carro, Spanbock, Kaster & Cuiffo, 211 AD2d 617.)
The Court of Appeals in Da Silva II made it clear that plaintiff was limited to the remedies afforded by CPLR 5523, and that the prior order, restoring the trial court’s judgment of specific performance, was no longer enforceable. Defendant AA&F’s failure to timely move to amend the remittitur, however, did not result in any injury to the plaintiff. Following the reversal of the Appellate Division order, both the appellate court, and the trial court were empowered to direct restitution. (See, CPLR 5523; Deli of Latham v Freije, 133 AD2d 889; see also, Swanson v Swanson, 53 NY2d 936.) Plaintiff, however, has not made any timely or appropriate application for restitution, pursuant to CPLR 5523.
Turning now to the claims against Suozzi, English and Shapiro, it is clear that plaintiff’s loss of his interest in the real property stemmed from the failure to obtain a stay of the Appellate Division’s order in Da Silva I, and the subsequent cancellation of the notice of pendency. It is well settled that an attorney is liable in a malpractice action only if it can be established that his or her conduct fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of the profession. (Bernstein v Oppenheim & Co. 160 AD2d 428, 430; Grago v Robertson, 49 AD2d 645, 646.) Clearly, this may pose a question of law, determinable on a motion to dismiss. (See, Rosner v Paley, 65 NY2d 736, 738.) An attorney, however, is not held to a rule of infallibility, and is not liable for an honest mistake of judgment where the proper course of action is open to reasonable doubt. (Grago v Robertson, supra, 49 AD2d, at 646; 76 NY Jur 2d, Malpractice, § 39.) As was observed by the Court of Appeals in Rosner v Paley (supra, 65 NY2d, at 738), a pleading which alleges "no more than an error of judgment * * * does not rise to the level of malpractice.”
In our case, in my view, defendants’ actions did not amount to malpractice. Of some relevance is that all of this occurred in the 1980’s. At the time the appeal in Da Silva I was pending, and during the pendency of the litigation in Da Silva II, it was not clearly established that the failure to obtain a stay and the cancellation of the notice of pendency would be fatal to plaintiff’s claims. Rather, in 1988, when the matter was still in litigation, then current research revealed that, "[i]f a person has actual notice of the litigation, any interest he may acquire in the property is taken subject to the *801 consequences of the lawsuit, whether or not a statutory notice of pendency is on file”. (7A Weinstein-Korn-Miller, NY Civ Prac I 6501.12 [1988].)
13 Carmody-Wait 2d, NY Prac § 87:79 (at 544), as it existed at that time, is instructive and provides as follows: "Although the equitable doctrine of lis pendens’ operates to burden the purchaser of property from a litigant with constructive notice of the pendency of the suit, if the purchaser has actual knowledge of the pendency of the suit or knowledge of such facts as in law is sufficient to put him on notice, of course there can be no necessity for invoking the rule of constructive notice. He cannot plead ignorance of the action but will be held to have acquired his interest subject to the results thereof.”
Furthermore, contrary to plaintiffs assertions, a reading of Revelone, Inc. v Arlind Realty Corp. (274 App Div 656, affd 299 NY 667) would not have clearly informed counsel of the procedures necessary to protect plaintiffs interest. There has been no showing that counsel was unaware of Revelone (supra). Moreover, the provisions of the former Civil Practice Act §§ 586, 587, relied upon by the Court in Revelone (supra), had been repealed, and were not expressly incorporated into the CPLR. Thus, the continuing viability of Revelone (supra) was not at all clear. Suozzi, English and Shapiro’s interpretation of the provisions of CPLR article 65 were no different than those of the trial court and the Appellate Division in Da Silva II.
In fact, until the Court of Appeals, in this very case (Da Silva II, 76 NY2d 436, supra), decided that actual knowledge by the purchaser of the pendency of the appeal was not legally significant in the absence of an outstanding valid notice of pendency, the issue was not one free from doubt. There were no decisions on the issue under the CPLR. None have been cited or found. Revelone, Inc. v Arlind Realty Corp. (supra) was decided under the former Civil Practice Act, which, as noted, had a different statutory provision which was not included in the CPLR.
Bearing in mind that it was this very case which determined the issue and, in doing so, created what, in effect, amounted to new law, the fact that the attorneys pursued what in hindsight was the wrong course of action, should not result in the imposition of liability for legal malpractice. Plainly, what was involved here was an error of judgment which, in my view, does not and may not rise to the level of *802 malpractice. To hold otherwise, under the facts of this case, would impose upon the attorneys a standard of infallibility, which, quite clearly, has been rejected in this State. (See, Rosner v Paley, supra, 65 NY2d, at 738; Grago v Robertson, supra, 49 AD2d, at 646.)
Under the circumstances, it is clear plaintiff cannot establish that these defendants had disregarded a rule or principle of law that was well known, long published and readily defined. (Cf., Gimbel v Waldman, 193 Misc 758; 76 NY Jur 2d, Malpractice, § 39.) Therefore, on this record, Suozzi, English and Shapiro’s failure to predict that the Court of Appeals would ultimately hold against plaintiff in its interpretation of the provisions of CPLR 6514 (a) and 5519, as a matter of law, does not amount to legal malpractice.
To hold otherwise, would, in my view, ignore the novelty of the ruling and approach taken in Da Silva II, which was actually the first such decision under the Civil Practice Law and Rules, insofar as concerns a purchaser who had actual knowledge of a pending appeal affecting title to real property. The fact that the same result persisted under the former Civil Practice Act, while it might have influenced the Court of Appeals in reaching its determination in Da Silva II, this hardly equates with holding an attorney liable for legal malpractice under such circumstances, essentially involving what, at that time, may be considered to be an error of judgment.
In view of the foregoing, the motion by defendant Albanese, Albanese & Fiore to dismiss the complaint, and the cross motion by codefendants Suozzi, English and Shapiro for the same relief, dismissing the complaint, are granted in all respects.