*455 OPINION OF THE COURT
W. Dennis Duggan, J.
The narrowly focused question in this case is whether the attorney for the respondent father should be sanctioned for her failure to attend a scheduled court appearance for which she had notice. However, a wider angle inquiry into this area illuminates the cavalier approach that a significant portion of the trial Bar takes toward appearances in Family Court.
This case is remarkably uncomplicated. A custody petition was filed by the mother in January of 1998. In February, the parties appeared for arraignment, with their attorneys and the Law Guardian present. At that time, a temporary order was issued granting joint legal custody, with primary physical custody of the two children to the mother. The case was adjourned to April so the parents could engage in family counseling. In April, both parents appeared with their attorneys and the Law Guardian present. The case was adjourned to June to allow for additional family counseling. The June date was advanced three weeks so the parents could attend parenting classes. This describes the course of a typical custody case in Family Court. Namely, services are put in place and review and adjustments are made from time to time to help the family work through its problems.
On June 25, 1998, the parents again appeared. The mother’s counsel and the Law Guardian were present; the father’s attorney was not. The father indicated that he had discharged his attorney. No consent to change attorney has been filed with the court nor has a motion for permission to withdraw been made. The father’s attorney has now been directed to show cause why sanctions should not be imposed for her failure to attend the June 25, 1998 court date.
Counsel for the father has responded to the show cause order as follows: “It comes as a shock to me to address sanction issues, as I am sure [the father] would have advised the Court of his previous, May, 1998, decision to proceed without counsel. Kindly advise me how this issue of non-appearance got this far. As you can see from the enclosures, everyone was put ‘on notice’ of [the father’s] decision to proceed pro se. I certainly hope this clarifies matters. Perhaps the better practice would have been to copy the Court with the enclosures herein provided.”
Counsel does acknowledge that she failed to inform the court of the fact that she was discharged. However, contrary to her *456 opinion of what would constitute “the better practice” and notwithstanding her apparent shock at the prospect of being sanctioned for not appearing at a scheduled court date, what counsel should have done was to follow the proper procedure for an attorney of record to withdraw from a case, even cases pending in Family Court.
Unfortunately, the behavior of counsel in this case is far from an isolated occurrence in Family Court. In fact, its prevalence, along with the crushing case load in our Family Courts, often inures the court to these occurrences which are a great inconvenience to many people. Attorneys who do not appear because they are “fired” by their clients, or who just fail to appear or appear late or who neglect to copy the Law Guardian on pleadings, letters and requests for adjournments, provide a metaphor for the second-class treatment of Family Court by a significant portion of the Bar. The harm caused by this behavior is far from trivial.
For starters, there is the obvious inconvenience to the other parent who, being apprehensive about going to court to begin with and having probably taken a leave day from work, perhaps without pay, now finds that she must come back yet another time and pay her attorney an extra $100 to $300 for the wasted appearance. Then, there is the inconvenience to the court, which must squeeze another appearance into its already crowded docket. There is also the burden to the taxpayers, who must fund the court operations, the Law Guardian and often an assigned counsel, all for a wasted court appearance.
Most important is the effect of the delay on the children. In Family Court, the court is often trying to do the equivalent for a family what all the king’s horses and all the king’s men could not do for Humpty Dumpty. The court, the attorneys, the Law Guardian and caseworkers are trying to do this on the equivalent of a flatbed car of a moving train. Whereas most civil and criminal cases attempt to factually resolve a past or static situation, Family Court cases almost always involve an attempt to mend fluid circumstances. These are situations where emotions have been abraded and common civility eroded by personal acrimony and sometimes physical violence. The failure of an attorney to appear at a scheduled court date has the potential to bring a tenuous recovery process to a halt and sometimes even reverse it. At its best, it is a huge inconvenience and a gross display of professional inconsiderateness. At its worst, a family can suffer a devastating breakdown, especially where the now pro se parent has mental health issues. *457 In all cases, it shows a gross disregard for the children who are the subject of the proceeding and who are waiting for the adults to come to peace. In overlooking court delays, we can all become unmindful of the fact that a mere eight weeks of delay is, for a four-year-old child, 4% of his entire life.
CPLR 321 (a) provides that “[i]f a party appears by attorney [he] may not act in person in the action except by consent of the court.” Once an attorney has appeared in an action there are two ways he or she can get out of the case (excluding such obvious causes such as death, incapacitation or disbarment). First, the attorney can serve on the other appearing attorneys and pro se parties and file with the court a consent to change attorneys, signed by the retiring attorney and signed and acknowledged by the party. Second, an attorney of record may withdraw by order of the court upon motion on notice to the client and other appearing attorneys and pro se parties. (See, CPLR 321 [b]; Siegel, NY Prac § 115 [2d ed].) Simply put, a letter from one attorney to the other attorneys in the action indicating that she was discharged does not relieve the attorney of her obligation to appear at a scheduled court date. Counsel’s copying the court on the letter or sending the letter directly to the court would have been an improvement, but it would still not meet compliance with the law.
Rules of the Chief Administrator of the Courts (22 NYCRR) § 130-2.1 allows sanctions and costs to be imposed upon any attorney who, without good cause, fails to appear at a scheduled court date. The determination to impose sanctions or costs must be based on all of the attendant circumstances and must include the following considerations:
1. The excuse given for nonappearance.
2. The adequacy of notice of the scheduled court date.
3. Whether counsel notified the court of her expected nonappearance.
4. Whether substitute counsel appeared.
5. Whether counsel filed a part 125 affidavit of engagement.
6. Whether counsel failed to appear on other occasions in the same proceeding.
7. Whether counsel has been sanctioned previously.
8. The nature of the harm caused by the attorney’s failure to appear.
In this case, considerations 1, 2, 3, 4 and 5 are not relevant because counsel believed she did not have to appear because she was discharged. (Though, it has been noted, she failed to *458 notify the court of even this.) Counsel had appeared at the previous court dates for this action and the court is not aware that she has been previously sanctioned. The harm caused by her nonappearance was minimized by the court because her client was permitted to proceed pro se*
Counsel has not shown good cause why sanctions should not be imposed but, under all of the circumstances, the court declines to impose formal sanctions. Counsel will be given the benefit of the doubt, now that it must be abundantly clear to her that the law and rules governing appearances by attorneys apply equally to Family Court proceedings as they do in Supreme, County and Surrogate’s Courts.

 The validity of actions taken by a pro se litigant where her attorney of record has not followed the proper procedures to be relieved or replaced rests on thin ice. The differing approaches taken by the Departments in this area is a caution light to the trial Bench and Bar. (See, Moustakas v Bouloukos, 112 AD2d 981 [2d Dept]; Imor v Imor, 119 AD2d 913 [3d Dept]; Rejewski v Rejewski, 214 AD2d 954 [4th Dept].)