[996 NYS2d 646]

Regina Farage, Appellant, v Lance Ehrenberg, Esq., Respondent.

Second Department, November 19, 2014

APPEARANCES OF COUNSEL

*Andrew Lavoott Bluestone*, New York City, for appellant.

*Lance Ehrenberg*, New York City, pro se, and *Alan D. Handler* for Lance Ehrenberg, respondent.

**OPINION OF THE COURT**

DILLON, J.

This appeal presents the question of whether the attorney-client relationship, for purposes of measuring the continuing representation toll of the statute of limitations, should run to the filing of the consent to change attorney form or to earlier factual events involving the attorney and the client. We hold

that courts must examine the unique circumstances of each case and that where, as here, facts establish a client's discharge of counsel on a date preceding execution and filing of the consent to change attorney form, the continuing representation toll of the statute of limitations for legal malpractice runs only to the date of the actual discharge and not to the date of the later consent to change attorney.

Relevant Facts

This appeal arises out of the attorney-client relationship between the plaintiff and the defendant attorney in connection with automobile-related personal injury claims. By way of background, the plaintiff had been involved in two separate automobile accidents, one on April 30, 2002 (hereinafter the 2002 accident), and the second on June 17, 2005 (hereinafter the 2005 accident).

The plaintiff initially retained the defendant to prosecute an action relating to the 2002 accident. The defendant thereafter moved in that action to withdraw as counsel, but while that motion was pending, the action was settled on the record in open court on November 16, 2006, for the sum of $100,000. The stipulation of settlement (hereinafter the stipulation) memorialized a reduction of the defendant's contingency fee to 27% and a withdrawal of the defendant's motion to be relieved as counsel, and was so-ordered by Judge Lila Gold of the New York City Civil Court, Kings County.

Thereafter, the plaintiff refused to execute the general release contemplated by the stipulation, as she claimed it was a product of fraud and mistake.

The plaintiff cancelled three appointments with the defendant between the date of the in-court settlement on November 16, 2006, and December 13, 2006. In the months that followed, the defendant's continuing attempts to contact or meet with the plaintiff concerning the settlement of the 2002 accident claim were all unsuccessful, and on May 21, 2007, the defendant filed a second motion to be relieved as counsel. The record does not reveal that any decision was ever rendered on that motion. On November 19, 2007, the plaintiff's new counsel, who had been retained to seek vacatur of the stipulation, advised the defendant in writing that the plaintiff regarded the defendant "as her discharged attorney" and that the defendant was "not authorized by her to take any steps to enforce the stipulation form which was so ordered in altered form after she had signed under false pretenses."

The plaintiff's new counsel moved in the Civil Court to vacate the stipulation. The matter was referred to Judicial Hearing Officer (hereinafter JHO) Seymour Schwartz to hear and report. JHO Schwartz concluded, after a three-day hearing, that the stipulation was enforceable and more favorable to the plaintiff than an alternate handwritten stipulation proffered by the plaintiff. The JHO's report and recommendations were confirmed in a decision and order of the Civil Court (Sweeney, J.), dated October 29, 2009. An appeal of the Civil Court's order was ultimately dismissed by the Appellate Term for the Second, Eleventh, and Thirteenth Judicial Districts for failure to perfect.

While the plaintiff litigated the enforceability of the stipulation, the parties formalized a substitution of counsel in connection with the 2002 accident claim. A consent to change attorney dated April 11, 2008, was signed by the plaintiff, the defendant, and incoming counsel, and included reference to the defendant's attorney charging lien. On May 16, 2008, the defendant filed a closing statement with the Office of Court Administration and mailed a copy of the statement to the plaintiff on the same date.

Meanwhile, in the summer of 2005, the plaintiff also retained the defendant to represent her interests with regard to the 2005 accident. As to that matter, the parties' relationship also was rocky and appears to have been negatively affected by the strains that arose during the handling of the 2002 accident claim. On January 15, 2007, the defendant wrote to the plaintiff's physical therapist, advising him that he had been asked to stop handling the 2005 matter and requesting that the therapist's bills be forwarded in the future directly to the plaintiff's insurer. However, in mid-July of 2007, the defendant was negotiating a possible settlement of the plaintiff's 2005 accident claim with an insurance carrier and requested the plaintiff's cooperation in executing medical and insurance authorization forms. On March 13, 2008, the plaintiff took physical possession of the defendant's file on the 2005 accident, and the transfer was memorialized by a receipt signed by the parties and witnessed by the plaintiff's incoming counsel. The plaintiff had not commenced any litigation arising out of the 2005 accident as of that date.

On March 31, 2011, the plaintiff commenced this action against the defendant sounding in legal malpractice and asserting various related fraud, deceit, negligence, contractual, and Judiciary Law causes of action. After interposing an answer and asserting affirmative defenses therein, the defendant moved for

summary judgment dismissing the complaint on the grounds, inter alia, that it was both untimely and barred by the doctrine of collateral estoppel. The defendant argued that all of the plaintiff's theories of recovery as to the 2002 accident arose from alleged legal malpractice subject to a three-year statute of limitations measured from the in-court settlement of that action on November 16, 2006, the date that he maintains that the attorney-client relationship ended. Thus, he argued that the commencement of the action on March 31, 2011, was untimely. The defendant also argued that, since the stipulation settling the 2002 accident claim was upheld by the Civil Court in an order dated October 29, 2009, and the plaintiff's appeal from that order was dismissed by the Appellate Term for failure to perfect, the plaintiff's action as to that matter was barred by collateral estoppel. Regarding the handling of the plaintiff's 2005 accident claim, the defendant likewise argued that his representation ended on November 16, 2006, more than three years prior to the commencement of the instant action, rendering the matter untimely as to it.

In opposition, the plaintiff argued that, as to any legal malpractice committed in connection with the 2002 accident claim, the continuing representation doctrine tolled the statute of limitations up to the execution of the consent to change attorney dated April 11, 2008, thus rendering the action timely. Similarly, the plaintiff argued that her causes of action referable to the 2005 accident claim were timely in that the defendant's representation did not end until he filed an Office of Court Administration (hereinafter OCA) closing statement on May 16, 2008, within three years of the commencement of the action. In the same set of papers, the plaintiff cross-moved for the imposition of sanctions pursuant to CPLR 8303-a and 22 NYCRR 130-1.1.

In the order appealed from, dated March 9, 2012, the Supreme Court granted the defendant's motion for summary judgment dismissing the complaint on the ground that the plaintiff's action was barred by the applicable statute of limitations. The plaintiff's cross motion for the imposition of sanctions was, in effect, denied sub silentio.

For the reasons set forth below, we affirm.

Analysis

An action to recover damages for legal malpractice must be commenced within three years from the accrual of the claim (see CPLR 214 [6]; Zorn v Gilbert, 8 NY3d 933, 934 [2007]; McCoy v Feinman, 99 NY2d 295, 301 [2002]; Weiss v Manfredi, 83

NY2d 974, 977 [1994]; *Macaluso v Del Col*, 95 AD3d 959, 960 [2012]; *Fleyshman v Suckle & Schlesinger, PLLC*, 91 AD3d 591, 592 [2012]; *Rupolo v Fish*, 87 AD3d 684, 685 [2011]; *Krichmar v Scher*, 82 AD3d 1164, 1165 [2011]; *Hasty Hills Stables, Inc. v Dorfman, Lynch, Knoebel & Conway, LLP*, 52 AD3d 566, 567 [2008]). Accrual is measured from the commission of the alleged malpractice, when all facts necessary to the cause of action have occurred and the aggrieved party can obtain relief in court (*see McCoy v Feinman*, 99 NY2d at 301; *Landow v Snow Becker Krauss, P.C.*, 111 AD3d 795 [2013]; *730 J & J, LLC v Polizzotto & Polizzotto, Esqs.*, 69 AD3d 704, 705 [2010]; *Hasty Hills Stables, Inc. v Dorfman, Lynch, Knoebel & Conway, LLP*, 52 AD3d at 567; *Town of Wallkill v Rosenstein*, 40 AD3d 972, 973 [2007]; *Iser v Kerrigan*, 37 AD3d 662, 663 [2007]), regardless of when the operative facts are discovered by the plaintiff (*see Shumsky v Eisenstein*, 96 NY2d 164, 166 [2001]; *Glamm v Allen*, 57 NY2d 87, 95 [1982]; *McDonald v Edelman & Edelman, P.C.*, 118 AD3d 562 [2014]; *Lincoln Place, LLC v RVP Consulting, Inc.*, 70 AD3d 594 [2010]; *St. Stephens Baptist Church, Inc. v Salzman*, 37 AD3d 589, 590 [2007]). However, "[c]auses of action alleging legal malpractice which would otherwise be barred by the statute of limitations are timely if the doctrine of continuous representation applies" (*Macaluso v Del Col*, 95 AD3d at 960; *see Glamm v Allen*, 57 NY2d at 91-94). The three-year statute of limitations is tolled for the period following the alleged malpractice until the attorney's continuing representation of the client on a particular matter is completed (*see Zorn v Gilbert*, 8 NY3d at 934; *Shumsky v Eisenstein*, 96 NY2d at 167-168; *Glamm v Allen*, 57 NY2d at 93; *Louzoun v Kroll Moss & Kroll, LLP*, 113 AD3d 600, 601 [2014]; *Montes v Rosenzweig*, 21 AD3d 460, 463-464 [2005]; *Griffin v Brewington*, 300 AD2d 283, 284 [2002]; *Pellati v Lite & Lite*, 290 AD2d 544, 545 [2002]). For the doctrine to apply, there must be clear indicia of "an ongoing, continuous, developing, and dependent relationship between the client and the attorney" (*Aseel v Jonathan E. Kroll & Assoc., PLLC*, 106 AD3d 1037, 1038 [2013]).

A defendant moving for summary judgment in a legal malpractice action on the ground that it is untimely must make a prima facie showing that the malpractice action was commenced more than three years after the date on which the cause of action accrued (*see Fleyshman v Suckle & Schlesinger, PLLC*, 91 AD3d at 592; *Rupolo v Fish*, 87 AD3d at 685; *Krichmar v Scher*, 82 AD3d at 1165; *Hasty Hills Stables, Inc. v Dorfman, Lynch,*

*Knoebel & Conway, LLP*, 52 AD3d at 567). If the defendant makes a prima facie showing, the burden then shifts to the plaintiff to raise a triable issue of fact as to whether the statute of limitations was tolled or is otherwise inapplicable (*see Kitty Jie Yuan v 2368 W. 12th St., LLC*, 119 AD3d 674 [2014]; *Wei Wei v Westside Women's Med. Pavilion, P.C.*, 115 AD3d 662, 663 [2014]). Here, the plaintiff contends that the statute of limitations was tolled by the continuous representation doctrine (*see Hasty Hills Stables, Inc. v Dorfman, Lynch, Knoebel & Conway, LLP*, 52 AD3d at 567).

There are different ways that attorney-client relationships can be ended. One way is for the client to discharge the attorney, which can be done at any time with or without cause (*see Matter of Cohen v Grainger, Tesoriero & Bell*, 81 NY2d 655, 658 [1993]; *Campagnola v Mulholland, Minion & Roe*, 76 NY2d 38, 43 [1990]; *Lai Ling Cheng v Modansky Leasing Co.*, 73 NY2d 454, 457 [1989]; *Teichner v W & J Holsteins*, 64 NY2d 977, 979 [1985]; *Demov, Morris, Levin & Shein v Glantz*, 53 NY2d 553, 556 [1981]; *Hsu v Carlyle Towers Coop. "B," Inc.*, 102 AD3d 835, 836-837 [2013]; *Byrne v Leblond*, 25 AD3d 640, 641 [2006]). A second way is for the attorney and client to execute a consent to change attorney or for counsel to execute a stipulation of substitution, which is then filed with the court in accordance with CPLR 321 (b) (*see* Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C321:2). Alternatively, if the attorney deems it necessary to end the relationship without the consent of the client, such as where there is an irretrievable breakdown in the relationship or a failure of cooperation by the client, the attorney may move, on such notice as may be directed by the court, to be relieved as counsel by court order (*see e.g.* CPLR 321 [b] [2]; Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.16 [c]; *Sarlo-Pinzur v Pinzur*, 59 AD3d 607, 608 [2009]; *Green v Gasparini*, 24 AD3d 505, 506 [2005]; *McCormack v Kamalian*, 10 AD3d 679 [2004]).

An affirmative discharge of an attorney by the client is immediate. By contrast, from the standpoint of adverse parties, counsel's authority as an attorney of record in a civil action continues unabated until the withdrawal, substitution, or discharge is formalized in a manner provided by CPLR 321 (*see Bevilacqua v Bloomberg, L.P.*, 70 AD3d 411, 412 [2010]; *Eveready Ins. Co. v DeLeon*, 287 AD2d 536, 537 [2001]; *Moustakas v Bouloukos*, 112 AD2d 981, 983 [1985]; *Blondell v Malone*, 91 AD2d

1201, 1202 [1983]; *Hess v Tyszko*, 46 AD2d 980 [1974]; *Hendry v Hilton*, 283 App Div 168, 171-172 [1953]). This rule protects adverse parties from the uncertainty of when or whether the authority of an opposing attorney has been terminated (*see Moustakas v Bouloukos*, 112 AD2d at 983), even when the adverse party is informally aware that a discharge or substitution of an opposing counsel is pending or imminent (*see Drummond v Petito*, 253 AD2d 407 [1998]; *Hawkins v Lenox Hill Hosp.*, 138 AD2d 572, 573 [1988]; *Juers v Barry*, 114 AD2d 1009 [1985]; *Blondell v Malone*, 91 AD2d at 1202).

With the foregoing as a backdrop, the defendant established his prima facie entitlement to judgment as a matter of law dismissing the legal malpractice claim arising from the 2002 accident by pointing to the express allegations of the complaint. Paragraph 23 of the complaint describes circumstances of the open-court settlement of the plaintiff's 2002 accident claim on November 16, 2006, and alleges that the defendant was "formally withdrawn as Regina Farage's counsel" and "no longer represented Farage's interest[s]" as of that date (emphasis omitted). Notably, the allegations contained in paragraph 23 of the complaint are not made upon mere information and belief, but are directly verified by the plaintiff, constituting formal judicial admissions, which are evidence of the facts stated (*see GMS Batching, Inc. v TADCO Constr. Corp.*, 120 AD3d 549 [2014]; *Bogoni v Friedlander*, 197 AD2d 281, 291-292 [1994]; *Pok Rye Kim v Mars Cup Co.*, 102 AD2d 812 [1984]; Jerome Prince, Richardson on Evidence § 8-215 [Farrell 11th ed 1995]). The termination of the parties' attorney-client relationship is also verified by the defendant's correspondence to the plaintiff's physical therapist dated January 15, 2007, stating that the plaintiff had asked him "to stop handling th[e] matter," and by correspondence to the defendant from the plaintiff's incoming counsel dated November 19, 2007, stating that the plaintiff "regards you as her discharged attorney," unauthorized "to enforce the [contested] stipulation" that settled the 2002 action (*see Piliero v Adler & Stavros*, 282 AD2d 511, 512 [2001]). Whether the termination of the attorney-client relationship is measured from the November 16, 2006 stipulation, the January 15, 2007 correspondence from the defendant, or the November 19, 2007 correspondence from the plaintiff's incoming counsel, all three of these potentially operative dates precede the commencement of the instant action by more than three years.

As for the legal malpractice claim arising from the 2005 accident, the defendant established his prima facie entitlement to

judgment as a matter of law by proffering a copy of a document signed by the parties on March 13, 2008, which specifically referenced the 2005 accident, and which reflected the plaintiff's receipt from the defendant of her entire 2005 case file. The document was even witnessed by the plaintiff's then-incoming counsel.*

In opposition to the defendant's prima facie showing, the plaintiff failed to present documentary evidence that the parties had a mutual understanding of the need for further representation by the defendant beyond the 2006 and 2007 correspondences as to the 2002 accident, and the March 13, 2008 transfer of the litigation file as to the 2005 accident (*see McCoy v Feinman*, 99 NY2d at 306; *Landow v Snow Becker Krauss, P.C.*, 111 AD3d at 796-797). Moreover, there is no evidence of any ongoing, continuous, developing, and dependent relationship between the parties (*see Aseel v Jonathan E. Kroll & Assoc., PLLC*, 106 AD3d 1037, 1038 [2013]; *Marro v Handwerker, Marchelos & Gayner*, 1 AD3d 488 [2003]; *Daniels v Lebit*, 299 AD2d 310 [2002]; *Corless v Mazza*, 295 AD2d 848 [2002]; *Pellati v Lite & Lite*, 290 AD2d at 545; *Wester v Sussman*, 287 AD2d 618 [2001]; *Piliero v Adler & Stavros*, 282 AD2d at 512; *Ainbinder v Jacobi*, 268 AD2d 494 [2000]).

The plaintiff's argument that there was a continuation of the attorney-client relationship until April 11, 2008, when the consent to change attorney was created and that the action is thus timely is unavailing (*see Piliero v Adler & Stavros*, 282 AD2d at 512). The essence of a continuous representation toll is the client's confidence in the attorney's ability and good faith, such that the client cannot be expected to question and assess the techniques employed or the manner in which the services are rendered (*see Shumsky v Eisenstein*, 96 NY2d at 167; *Glamm v Allen*, 57 NY2d at 93-94; *Greene v Greene*, 56 NY2d 86, 94 [1982]). " 'One of the predicates for the application of the doctrine is continuing trust and confidence in the relationship between the parties' " (*Aseel v Jonathan E. Kroll & Assoc., PLLC*, 106 AD3d at 1038, quoting *Luk Lamellen U. Kupplungbau*

---

* While the defendant, in support of his motion for summary judgment, should have submitted a party affidavit rather than an attorney's affirmation (*see* CPLR 2106; *Law Offs. of Neal D. Frishberg v Toman*, 105 AD3d 712, 713 [2013]), his verified answer, annexed as an exhibit to his motion, set forth evidentiary facts sufficient to qualify as an affidavit of merit (*see* CPLR 105 [u]; *County of Nassau v Cedric Constr. Corp.*, 100 AD2d 890, 892 [1984]). This evidence, combined with other exhibits annexed to the motion, enabled the defendant to meet his prima facie burden of proof.

*GmbH v Lerner*, 166 AD2d 505, 507 [1990]). What constitutes a loss of client confidence is fact specific, varying from case to case, but may be demonstrated by relevant documentary evidence involving the parties, or by the client's actions. Here, the plaintiff undertook litigation to set aside the stipulation that settled the 2002 accident claim, without the defendant's litigation support, and with correspondence from a new counsel directing the defendant to take no steps to enforce the stipulation. As to the legal malpractice claim arising from the 2005 accident, the plaintiff physically retrieved the entirety of her litigation file from the defendant, as reflected by a receipt witnessed by another attorney. In these contexts, the consent to change attorney form dated April 11, 2008, approximately one month after the plaintiff's retrieval of her 2005 litigation file, performs a mere ministerial task of informing the court, other parties, and the world that the defendant was no longer authorized to act on the plaintiff's behalf as counsel. Thus, the consent to change attorney does not identify, for continuing representation purposes, the benchmark date that the parties' attorney-client relationship was actually terminated by the plaintiff. Other documentary evidence exists in the record evidencing a termination of the attorney-client relationship within a time frame that clearly preceded the consent to change attorney form dated April 11, 2008, and which was more than three years prior to the commencement of this action.

This opinion should not be construed to suggest that a consent to change attorney cannot ever govern the issue of how long an attorney's legal representation lasted. In a given case, the consent to change attorney may reflect the end date of an attorney-client relationship, in the absence of other evidence that establishes an earlier date (*see Louzoun v Kroll Moss & Kroll, LLP*, 113 AD3d at 602; *Sladowski v Casolaro*, 84 AD3d 1056, 1057 [2011]; *Sommers v Cohen*, 14 AD3d 691, 693 [2005]; *Marro v Handwerker, Marchelos & Gayner*, 1 AD3d 488 [2003]; *Wester v Sussman*, 287 AD2d 618 [2001]). Here, however, the record is replete with evidence that the plaintiff unequivocally discharged the defendant well prior to the execution and filing of the consent to change attorney, rendering the consent form a mere memorialization of what had already occurred.

■ Equally unavailing is the plaintiff's argument that her legal malpractice claims are timely when measured against the defendant's filing of the OCA-mandated closing statement. The defendant filed the closing statement dated May 16, 2008, with

OCA, and a copy was mailed to the plaintiff on the same date, within three years of the commencement of the instant action. The OCA statement, filed by the defendant to fulfill his obligations under 22 NYCRR 691.20 (b), is merely ministerial in nature, and provides no evidence that the parties had any ongoing, continuous, developing, and dependent relationship at any particular time within three years before the commencement of this action.

In addition, the complaint alleges causes of action sounding in deceit and collusion. While a recent case decided by the Court of Appeals holds that causes of action to recover damages for attorney deceit under common law or under Judiciary Law § 487 are governed by a six-year statute of limitations (*see Melcher v Greenberg Traurig, LLP*, 23 NY3d 10, 15 [2014]), it does not affect the result here. The *Melcher* case involved a plaintiff's claims of deceit and collusion under Judiciary Law § 487 against a law firm and one of its partners, to which the Court of Appeals applied the six-year statute of limitations of CPLR 213 (1). What distinguishes *Melcher* from the instant action is that *Melcher* did not involve any claim of legal malpractice. The Court of Appeals held in 1992 that in actions alleging professional malpractice (other than the medical, dental or podiatric varieties), where additional theories of recovery were asserted such as breach of contract, plaintiffs could prosecute cases governed by longer statutes of limitations based on the nature of the remedies sought (*see Santulli v Englert, Reilly & McHugh*, 78 NY2d 700, 708 [1992]; *see also Sears, Roebuck & Co. v Enco Assoc.*, 43 NY2d 389, 394-395 [1977]). However, *Santulli* was abrogated by the legislature's 1996 amendment to CPLR 214 (6) to provide, as it does today, that such professional malpractice actions are governed by a three-year statute of limitations "regardless of whether the underlying theory is based in contract or tort" (*see* CPLR 214 [6]; L 1996, ch 623; *Matter of R.M. Kliment & Frances Halsband, Architects [McKinsey & Co., Inc.]*, 3 NY3d 538, 541 [2004]; *Chase Scientific Research v NIA Group*, 96 NY2d 20, 27 [2001]). It is for this reason that post-1996 legal malpractice actions that also allege breach of contract, fraud, and other causes of action governed by lengthier statutes of limitations are dismissed as time-barred if not brought within three years of accrual, if the additional claims involve facts duplicating the legal malpractice claims and do not allege distinct damages (*see e.g. Palmieri v Biggiani*, 108 AD3d 604, 608 [2013]; *Soni v Pryor*, 102 AD3d 856, 858 [2013]; *Pace v*

*Raisman & Assoc., Esqs., LLP*, 95 AD3d 1185, 1188-1189 [2012]; *Leon Petroleum, LLC v Carl S. Levine & Assoc., P.C.*, 80 AD3d 573, 574 [2011]; *Scartozzi v Potruch*, 72 AD3d 787, 789 [2010]). We see no reason not to apply those holdings to the plaintiff's remaining causes of action, including those sounding specifically in deceit. We do not construe *Melcher* as calling for any contrary result or interpreting CPLR 214 (6) in any manner other than its plain language where a claim of legal malpractice has been asserted.

The plaintiff's remaining contentions are without merit.

For the foregoing reasons, we conclude that the Supreme Court properly, in effect, granted that branch of the defendant's motion which was for summary judgment dismissing the complaint as time-barred by the three-year statute of limitations contained in CPLR 214 (6), and the order is affirmed insofar as appealed from.

SKELOS, J.P., MALTESE and BARROS, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.