■ RONALD HART et al., Respondents, v CARRO, SPANBOCK, KASTER & CUIFFO, Defendant and Third-Party Plaintiff-Appellant, et al., Defendant. HAYT, HAYT & LANDAU, Third-Party Defendant-Respondent. [620 NYS2d 847] —In an action to recover damages, *inter alia,* for legal malpractice, the defendant third-party plaintiff appeals from an order of Supreme Court, Nassau County (Levitt, J.), dated January 31, 1992, which (1) denied its motion to disqualify Hayt, Hayt & Landau as counsel of record for the plaintiffs, and (2) granted those branches of the joint cross motion of the plaintiffs and Hayt, Hayt & Landau which were (a) to grant partial summary judgment to the plaintiffs on their cause of action for legal malpractice in connection with the sale of certain real estate located in the Bahamas, and (b) to dismiss the third-party complaint insofar as asserted against Hayt, Hayt & Landau.

Ordered that the order is affirmed, with one bill of costs payable to the respondents appearing separately and filing separate briefs.

This action for legal malpractice arises out of the plaintiffs' sale of stock in American Plan Corporation (hereinafter APC), to APN Holdings Corp. (hereinafter APN), an entity controlled by Abe J. Lieber (hereinafter Lieber). The APC stock was the major asset of a testamentary trust established under the will of Mark M. Hart. In essence, the plaintiffs claim that their financial losses were caused by the improper structuring of a Stock Purchase Agreement by the law firm of Carro, Span-

bock, Kaster & Cuiffo (hereinafter Carro), and Carro's deficient legal advice rendered in conjunction with the stock sale.

As a result of the problems which arose in connection with the stock sale Carro was discharged and ultimately replaced by Hayt, Hayt & Landau (hereinafter Hayt). The plaintiffs, then represented by Hayt, commenced this action against Carro, *inter alia*, for legal malpractice. Thereafter, Carro commenced the third-party action against Hayt, alleging that if Carro was negligent and caused the plaintiffs' losses, Hayt was similarly negligent and therefore liable for its proportionate share of any judgment against Carro. Carro then moved to disqualify Hayt as plaintiffs' counsel, on the grounds of conflict of interest and violation of the attorney-witness rule, as Carro intended to call Hayt as a witness in its third-party action.

APC and the Hart family were long-standing clients of the Carro firm. In 1976 Carro drafted the will providing for the testamentary trust, and in 1982 Carro drafted the Stock Purchase Agreement for the sale of the APC stock to APN. The Stock Purchase Agreement was executed by the contracting parties on June 25, 1982. It provided for a total purchase price of $5,206,910 for the stock, $1,750,000 of which was to be paid in two installments ($520,000 and $1,230,000) on or prior to the closing, with the deferred balance of $3,456,910 to be paid after closing pursuant to a promissory note. The Stock Purchase Agreement was structured so that the collateral used to secure the deferred balance had three components: (1) a second mortgage on commercial real property in Plano, Texas (hereinafter the Texas collateral); (2) a personal guaranty signed by Lieber, his wife, and five Lieber-controlled Bahamian corporations; and (3) the Bahamian collateral, which consisted of a pledge agreement whereby APN pledged shares of stock it owned in three Lieber-controlled corporations, which in turn owned separate parcels of real estate in the Bahamas, to wit, the Whitfield Parcel, owned by Whitfield Corp., the Sunward Villas Parcel, owned by Sunward Villas, Ltd., and the ABT Parcel, owned by ABT Investments, Ltd. (Only the ABT Parcel, which was sold on October 19, 1982, two weeks after the closing on the SPA, is at issue here.) The closing took place on October 5, 1982. The buyers also executed the personal guaranty and the pledge agreement at that time. After the closing, Lieber/APN failed to transfer the stock certificates relating to the Bahamian collateral and also refused to make payment on the promissory note.

To avoid its obligations on the promissory note, in June

1983 APN commenced an action against the plaintiffs (hereinafter the APN action) in Federal District Court, contending that it was fraudulently induced to purchase the APC stock at an inflated price. (Carro represented the plaintiffs in the APN action until January 1984, when the plaintiffs engaged Hayt to replace Carro as the plaintiffs' counsel of record.) In September 1985, the Federal District Court rendered a $4.5 million judgment in favor of the plaintiffs and against APN and the guarantors on the note (see, A.P.N. Holdings Corp. v Hart, 615 F Supp 1465). In October 1985, Lieber and the other guarantors filed for bankruptcy, or were otherwise determined to be judgment-proof. In addition, the Texas collateral had previously proved to be worthless.

This state of affairs left the Bahamian collateral as the only possible asset remaining to satisfy the APN judgment. Therefore, in December 1985 the plaintiffs, then represented by Hayt, contacted an attorney in the Bahamas who advised them that, under Bahamian law, the pledged stock did not secure any interest in the Bahamian corporations or in the Bahamian real estate. Moreover, since further investigation revealed that APN and Lieber had no other assets in the Bahamas, Bahamian counsel concluded that nothing further could be done to satisfy the judgment.

In these circumstances, the court properly granted the plaintiffs' cross motion for partial summary judgment as to the ABT Parcel. The record establishes that in improperly structuring the Stock Purchase Agreement and in failing to properly investigate, evaluate, and advise the plaintiffs as to the enforceability of the pledge agreement used to secure the Bahamian collateral, Carro did not exercise that degree of skill commonly exercised by an ordinary member of the legal community (see, Marshall v Nacht, 172 AD2d 727, 727-728). Carro thus breached its duty to the plaintiffs and proximately caused their damages (see, Marshall v Nacht, supra; Murphy v Stein, 156 AD2d 546, 548). Carro's attempt to avoid liability by emphasizing that it repeatedly urged plaintiff Ronald Hart to employ Bahamian counsel is to no avail. When, as here, counsel is retained in a matter involving foreign law, it is counsel's responsibility to conduct the matter properly and to know, or learn, the law of the foreign jurisdiction (see, Matter of New York County Lawyers Assn. [Roel], 3 NY2d 224, 232; Degen v Steinbrink, 202 App Div 477, 481). Counsel may not shift to the client the legal responsibility it was specifically hired to undertake because of its superior knowledge (see, Cicorelli v Capobianco, 90 AD2d 524, 525). In any event, we

note that Ronald Hart, as only one of the trustees, was not authorized to bind the trust. Accordingly, Carro was not in a position to properly rely on Ronald Hart's alleged decision not to retain counsel in the Bahamas.

The Supreme Court also properly dismissed the third-party complaint for contribution insofar as it is asserted against Hayt. Hayt did not begin representing the plaintiffs in the matter until January 1984. The injury-producing conduct, the improper structuring of the Stock Purchase Agreement and the related advice Carro provided to the plaintiffs, which led to the sale of the ABT Parcel on October 19, 1982, and the plaintiffs' subsequent financial loss, occurred before Hayt assumed any responsibility in the matter. Moreover, Hayt's choice to pursue a legal malpractice claim to mitigate the plaintiffs' damages, rather than pursue any evanescent interest the plaintiffs may have retained in the Bahamian collateral, was a reasonable course of action and did not constitute legal malpractice (see, Rosner v Paley, 65 NY2d 736, 738; Johnson v Berger, 193 AD2d 784, 786; Ferlisi v Jackrel, Kopelman & Raskin, 167 AD2d 502, 503).

Finally, with the dismissal of the third-party action insofar as it is asserted against Hayt, Carro's motion for disqualification of Hayt is academic. Rosenblatt, J. P., Lawrence, Joy and Krausman, JJ., concur.