[644 NYS2d 796]

In the Matter of the Estate of ARTHUR M. SACKLER, Deceased. GILLIAN T. SACKLER, as Executor of ARTHUR M. SACKLER, Deceased, Appellant; BREED, ABBOTT & MORGAN, Respondent, et al., Respondents.

Second Department, July 8, 1996

## APPEARANCES OF COUNSEL

*Cadwalader, Wickersham & Taft,* New York City *(Chopin, Miller & Yudenfreund [Jacqueline S. Miller]* of counsel), for appellant.

*Whitman Breed Abbott & Morgan,* New York City *(Alan J. Sorkowitz* of counsel), respondent *pro se.*

### OPINION OF THE COURT

SULLIVAN, J.

In this proceeding pursuant to SCPA 2110, the petitioner law firm of Breed, Abbott & Morgan (hereinafter BAM) sought to have the Surrogate fix and determine its fees for legal services rendered to the appellant, Gillian T. Sackler, an executor of the estate of Arthur Sackler. In her answer to the petition, the appellant set forth five affirmative defenses, asserted a distinct counterclaim sounding in legal malpractice, and demanded a jury trial. The Surrogate, reasoning that SCPA 2110 proceedings are purely statutory and rest in equity, struck the jury demand. Since this order improperly denied the appellant her right to a trial by jury as to her counterclaim for malpractice, reversal is necessary.

I

The petitioner alleges that Arthur M. Sackler died on May 26, 1987, leaving an estate valued at approximately $140 million. Gillian T. Sackler, the appellant, is his surviving spouse. Under the terms of his will, the bulk of the estate was bequeathed to the Arthur M. Sackler Revocable Trust. The appellant is the sole income beneficiary of the trust during her lifetime and is also one of the trustees. The appellant is also a director of the Arthur M. Sackler Foundation and the AMS Foundation for Arts, Sciences and Humanities, the remaindermen of the trust. The appellant is one of the executors of the estate and is also a beneficiary. Among the other executors, trustees, and directors are previous wives of the decedent and children from those prior marriages.

The appellant retained BAM in August 1987 to represent her various interests in these proceedings. There were numerous disputes between the members of the deceased's several families on the one hand and the appellant and the charitable remaindermen on the other. In June 1993, when a memorandum of understanding was being negotiated among all the disputants, the appellant retained the law firm of Cadwalader, Wickersham & Taft (hereinafter Cadwalader) to serve as her cocounsel along with BAM. The SCPA 2110 petition that is the subject of this appeal was verified on March 23, 1994. In it, BAM claimed entitlement to $3,506,854.78 (time charges of $3,287,314.80 and disbursements of $219,539.98) of which

$1,330,566 had been paid and $95,325 had been discounted, leaving a balance due of $2,080,963.78. On April 11, 1994, the appellant discharged BAM.

In her counterclaim, the appellant alleges that BAM breached its duty of care and was negligent in providing her with bad legal advice that caused her to sustain economic losses. In short, the appellant is counterclaiming against BAM to recover damages for legal malpractice, and is demanding a jury trial in connection therewith.

## II

If this were simply an SCPA 2110 proceeding to determine attorneys' fees, the decision of the Surrogate to strike the jury demand would be correct. Such proceedings are essentially equitable in nature and do not require a jury trial under the State Constitution (see, Matter of Richards, 5 AD2d 124; Matter of Pepi, 47 Misc 2d 137). The appellant's reliance on Matter of Kosch, Lewis & Reuben (253 App Div 919) as authority to the contrary is misplaced. In Matter of Britton (187 Misc 70, 76-77), Surrogate Witmer, in a thoughtful analysis, pointed out that Matter of Kosch, Lewis & Reuben (supra [cited therein as Matter of McKevett, 253 App Div 919]) was based only on dicta appearing in Matter of Matheson (265 NY 81). Similar reasoning was also employed by Surrogate Bennett in Matter of Pepi (supra). In view of the sound legal underpinnings of the decisions in Matter of Britton (supra) and Matter of Pepi (supra), we conclude that a petitioner in a proceeding pursuant to SCPA 2110 is not entitled to a jury trial.

In Matter of Garfield (14 NY2d 251), the Court of Appeals generally discussed the right to a jury trial in the Surrogate's Court. Unlike the situations in Matter of Richards (supra) and Matter of Pepi (supra), which concerned statutory equitable proceedings to fix counsel fees for services rendered in connection with the settlement of estates, Matter of Garfield (supra) involved an at-law creditor's claim filed in the Surrogate's Court by a law firm for legal services and disbursements rendered to the deceased during his lifetime. The executor denied the claim and the law firm petitioned for a compulsory accounting. In an opposing affidavit deemed her answer, the executor demanded a jury trial as to the disputed claim. The Surrogate vacated the jury demand, holding that the executor had no right to a jury trial. A divided Appellate Division affirmed this order (18 AD2d 29). The Court of Appeals reversed and held that the executor had the right to a jury trial to

defend the claim. Judge Bergan, writing for the majority, noted that the claim was "an action at law for work, labor and services, and the right to trial by jury in all such cases is preserved by the Constitution (art. I, § 2)" *(Matter of Garfield, supra,* at 256). He further observed that while the petitioner in such a proceeding may waive the right to a jury trial by asserting a legal claim in the context of an accounting proceeding in the Surrogate's Court, it could not thereby deprive the defendant of her right to a jury trial, "[n]or could the Legislature deprive a party who would have had a right to jury trial at common law of such right by authorizing a court of equity to take jurisdiction" *(Matter of Garfield, supra,* at 258). In a brief but cogent concurrence, Judge Scileppi emphasized the majority's reasoning that it is the nature of the claim, rather than the court in which it is interposed, which is determinative: "[i]f the claim were sued on in the Supreme Court, the parties would be entitled to a jury trial; why not so in this case?" *(Matter of Garfield, supra,* at 266).

The issue of the right to a jury trial in any court, and particularly the Surrogate's Court, in light of *Matter of Garfield (supra)* was examined in depth by Surrogate Sobel in *Matter of Luria* (63 Misc 2d 675). By tracing the constitutional language from 1777 onward, Surrogate Sobel pointed out that under our current Constitution, jury trials are guaranteed in all civil cases which either (1) were entitled to a jury trial at common law, or (2) enjoyed the right to a jury trial pursuant to statutes which were later accorded constitutional authority by virtue of the New York State Constitutions of 1821, 1846, and 1894 *(see also, Motor Vehicle Mfrs. Assn. v State of New York,* 75 NY2d 175, 180-181). Since 1894, the right to a jury trial has been provided by statute for certain other types of cases, but there is no constitutional right to a jury trial in those matters.

The statutory provision which currently governs jury trials in the Surrogate's Court is SCPA 502 (1), which provides as follows: "Right to jury trial. A party is entitled to trial by jury in any proceeding in which any controverted question of fact arises as to which any party has a constitutional right of trial by jury and in any proceeding for the probate of a will in which such question of fact arises, if duly demanded". It is clear from the language of the statute that in order to be considered for jury trial in the Surrogate's Court, a matter other than probate must be one which would have been afforded a jury trial under the Constitution, i.e., a matter triable by jury either at common law or by reason of statutes enacted up until 1894. As

Surrogate Sobel observed in discussing the decision of the Court of Appeals in *Matter of Garfield (supra),* it is the substance and nature of the subject claim for relief, not the court or the nature of the proceeding in which it is asserted, which determines the right to a jury trial. Hence, the same "jury trial" test applies to claims for relief in the Surrogate's Court as would apply in the Supreme Court, i.e., the court must determine whether the nature and substance of the claim is in law or equity *(see, Matter of Luria, supra,* at 682; *see also, Magill v Dutchess Bank & Trust Co.,* 150 AD2d 531).

The Court of Appeals recently employed the same analytical approach in deciding that the plaintiffs in *Matter of DES Mkt. Share Litig.* (79 NY2d 299, 305) were entitled to a jury trial to determine the issue of market share, since that issue constituted an integral part of their personal injury claims for money damages which would have been triable by a jury at common law.

### III

Applying the foregoing principles to the case before us, we find that while BAM's petition under SCPA 2110 is equitable in nature, the appellant is not thereby precluded from asserting a legal counterclaim sounding in malpractice and demanding a jury trial in connection therewith. The appellant's counterclaim seeks relief in the form of a money judgment for damages. It presents a claim at law rather than one in equity. It is a claim that would be entitled to a jury trial if it had been brought in the Supreme Court, and at common law it clearly would have received a jury trial. Therefore, a jury trial is appropriate in this case.

We further note in this regard that if the appellant did not assert the malpractice claim in opposition to BAM's fee proceeding, she would run the risk of being collaterally estopped from asserting it in the future *(see, Pirog v Ingber,* 203 AD2d 348; *Grace & Co. v Tunstead, Schechter & Torre,* 186 AD2d 15; *Chisholm-Ryder Co. v Sommer & Sommer,* 78 AD2d 143). In fact, BAM has raised as an affirmative defense that the appellant's partial payment of legal fees estops her from asserting a counterclaim for malpractice.

Since there is no question that the appellant's demand for a jury trial was properly made pursuant to SCPA 502 (2), the order of the Surrogate vacating the jury demand is reversed, and the matter is remitted to the Surrogate's Court for further proceedings consistent with the foregoing.

MANGANO, P. J., ALTMAN and HART, JJ., concur.

Ordered that the order is reversed, on the law, with costs payable by the estate, the appellant's demand for a jury trial is reinstated, and the matter is remitted to the Surrogate's Court, Nassau County, for further proceedings consistent herewith.