**John B. HATFIELD, Jr., Plaintiff,**

v.

**Stuart M. HERZ, Defendant.**

**Stuart M. Herz, Third–Party Plaintiff,**

v.

**Haas, Greenstein, Cohen, Gerstein & Starr, P.C., Third–Party Defendant.**

**No. 96CIV.5530(PKL).**

United States District Court, S.D. New York.

Aug. 14, 2000.

Deforest & Duer, New York City, Jeffrey E. Glen, of counsel, for Plaintiff.

Siller Wilk LLP, New York City, Mark E. Housman, Matthew F. Schwartz, of counsel, for Defendant/Third–Party Plaintiff.

L'Abbate, Balkan, Colavita & Contini, LLP, Garden City, NY, Peter L. Contini, of counsel, for Third–Party Defendant.

## OPINION AND ORDER

LEISURE, District Judge.

Pursuant to Fed.R.Civ.P. 56, defendant Stuart M. Herz moves for summary judgment dismissing this legal malpractice action brought by plaintiff John B. Hatfield, Jr. In the alternative, Herz moves for summary judgment on his cross-claim against third-party defendant Haas, Greenstein, Cohen, Gerstein & Starr, P.C. ("Haas, Greenstein") for indemnification or contribution. Haas, Greenstein moves for summary judgment dismissing this cross-claim. For the reasons stated herein, Herz's motion for summary judgment dismissing Hatfield's complaint is granted, and the cross-motions on the claim for indemnification or contribution are denied as moot.

## BACKGROUND

The procedural history and factual background of this case are discussed in additional detail in the Court's June 18, 1998, Opinion and Order denying Haas, Greenstein's motion to sever the third-party action from the principal suit. *See Hatfield v. Herz,* 9 F.Supp.2d 368 (S.D.N.Y.1998). Accordingly, the Court recounts only those facts relevant to the disposition of the instant motion.

In May 1992, Hatfield was sued by Alexander "Sandy" Milliken, in a state court action alleging that Hatfield, in his capacity as a board member and shareholder of a cooperative apartment corporation ("co-op"), unlawfully sought to prevent Milliken from subleasing his unit in the co-op. Public Service Mutual, the co-op's insurer, retained Herz to defend these claims. After a bench trial in May 1993, the Honorable Walter B. Tolub, Justice of the New York Supreme Court, New York County, awarded Milliken a permanent injunction and $8,500 in compensatory damages. In

1. On July 7, 2000, Justice Martin Schoenfeld of the Supreme Court, New York County, granted Haas, Greenstein's motion for summary judgment, dismissing the action in its

addition, Justice Tolub assessed $50,000 in punitive damages against each Hatfield and his co-defendant, Edward Marschner.

After Justice Tolub issued his findings of fact and conclusions of law in the *Milliken* case, Public Service Mutual retained Haas, Greenstein to handle Marschner and Hatfield's appeal. It is undisputed that Haas, Greenstein negligently failed to perfect its clients' appeal, and that, after referral to a special master, the Appellate Division, First Department, declined to accept the late filing. Hatfield and Marschner sued Haas, Greenstein in state court for legal malpractice,[1] and later commenced this action against Herz, alleging the same. Herz, in turn, impleaded Haas, Greenstein as a third-party defendant for indemnification or contribution.

In its June 25, 1998, Opinion and Order, this Court denied third-party defendant Haas, Greenstein's motion to stay this proceeding pending resolution of the state court action against it, and also denied its motion to sever the third-party action. *See Hatfield,* 9 F.Supp.2d at 374.

## DISCUSSION

"In order to prevail on a claim of legal malpractice under New York law, a plaintiff must demonstrate '(1) a duty, (2) a breach of the duty, and (3) proof that actual damages were proximately caused by the breach of the duty.'" *Tinelli v. Redl,* 199 F.3d 603, 606 (2d Cir.1999) (per curiam) (quoting *Marshall v. Nacht,* 172 A.D.2d 727, 569 N.Y.S.2d 113, 114 (2d Dep't 1991)). It is not disputed by the parties that Herz, as Hatfield's counsel, owed him a duty of care. To succeed on his claim of legal malpractice, therefore, plaintiff must establish that defendant breached this duty, and that said breach was the proximate cause of some injury to him.

entirety. *See Hatfield v. Haas, Greenstein, Cohen & Gerstein, P.C.,* No. 112533/96 (N.Y.Sup. Ct. July 7, 2000).

## I. STANDARD FOR SUMMARY JUDGMENT

A moving party is entitled to summary judgment if the Court determines that there exists no genuine issue of material fact to be tried and the party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56; *see also Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128 (2d Cir.1996); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the non-moving party's claim." *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995) (citation omitted); *see also Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224, 1231 (2d Cir.1996).

The Court's function in adjudicating a summary judgment motion is not to try issues of fact, but instead to determine whether there is such an issue. *See Sutera v. Schering Corp.,* 73 F.3d 13, 15–16 (2d Cir.1995). In determining whether genuine issues of material fact exist, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Holt,* 95 F.3d at 129.

■ "For a defendant in a legal malpractice case to succeed on a motion for summary judgment, evidence must be presented in admissible form establishing that the plaintiff is unable to prove at least one of the three essential elements of a malpractice cause of action." *Ostriker v. Taylor, Atkins & Ostrow,* 258 A.D.2d 572, 685 N.Y.S.2d 470, 471 (2d Dep't 1999); *see also Shopsin v. Siben & Siben,* 268 A.D.2d 578, 702 N.Y.S.2d 610, 611 (2d Dep't 2000). Although Herz does not contest that he owed a duty of care to Hatfield, he shall be entitled to summary judgment if he can establish that Hatfield is unable to prove *either* a breach of that duty, or an injury proximately caused by said breach.

■ To survive summary judgment, the plaintiff in a malpractice case cannot rest on his "allegations of what [he] views as deficiencies in defendant's conduct as his attorney," but must offer "evidence to establish the standard of professional care and skill that [defendant] allegedly failed to meet." *Thaler & Thaler v. Gupta,* 208 A.D.2d 1130, 617 N.Y.S.2d 605, 606 (3d Dep't 1994); *see also Estate of Ginor v. Landsberg,* 960 F.Supp. 661, 672 (S.D.N.Y. 1996) (Sand, J.), *aff'd,* 159 F.3d 1346 (2d Cir.1998). The courts generally require malpractice plaintiffs to "proffer expert opinion evidence on the duty of care to meet their burden of proof in opposition to a properly supported summary judgment motion." *Estate of Nevelson v. Carro, Spanbock, Kaster & Cuiffo,* 259 A.D.2d 282, 686 N.Y.S.2d 404, 405–06 (1st Dep't 1999) (citing *S & D Petroleum Co. v. Tamsett,* 144 A.D.2d 849, 534 N.Y.S.2d 800 (3d Dep't 1988)). "However, the requirement that plaintiff come forward with expert evidence on the professional's duty of care may be dispensed with where 'ordinary experience of the fact finder provides sufficient basis for judging the adequacy of the professional service.'" *Id.; see also Sallam v. Nolan,* 116 F.3d 466 (Table), 1997 WL 311607, at *2 (2d Cir.1997) ("Unless a juror's ordinary experience provides sufficient basis to assess the adequacy of the professional service, or the attorney's conduct falls below *any* standard of due care, expert testimony is necessary to establish that the attorney acted negligently.") (citing *Greene v. Payne, Wood & Littlejohn,* 197 A.D.2d 664, 602 N.Y.S.2d 883, 885 (2d Dep't 1993)) (emphasis added); *Clanton v. Vagianellis,* 192 A.D.2d 943, 596 N.Y.S.2d 593, 595 (3d Dep't 1993) ("[I]t is not without significance that no expert affidavit

was submitted on the motion by plaintiff attesting to the standard of professional care and skill that defendant allegedly failed to meet, a showing which is necessary to the demonstration of merit in a legal malpractice case") (affirming award of summary judgment to defendant).

█ Because Hatfield offers nothing more than his own conclusory allegations regarding the applicable standard of care, his malpractice claim can survive summary judgment only if a jury could reasonably conclude, on the basis of their own ordinary experience, that defendant's conduct was so negligent as to fall below *any* standard of care. *See, e.g., Estate of Ginor,* 960 F.Supp. at 672. Thus, even where an attorney's performance "may not have been optimal," he shall be entitled to summary judgment for a plaintiff's failure to proffer "any evidence from which a trier of fact could conclude that defendant['s] choice was malpractice." *Estate of Re v. Kornstein Veisz & Wexler,* 958 F.Supp. 907, 922 (S.D.N.Y.1997) (Sotomayor, J.)

## II. BREACH OF DUTY

█ " 'In order to recover damages for malpractice, it must be established that the attorney failed to exercise that degree of care, skill, and diligence commonly possessed and exercised by a member of the legal community.' " *675 Chelsea Corp. v. Lebensfeld,* 1997 WL 576089, at *2 (S.D.N.Y. Sept.17, 1997) (Sotomayor, J.) (quoting *Hwang v. Bierman,* 206 A.D.2d 360, 614 N.Y.S.2d 51, 52 (2d Dep't 1994)). Nonetheless, "[a]ttorneys are entitled to significant discretion in determining which positions to advance on the behalf of their clients, and in determining how best to advance those positions." *675 Chelsea,* 1997 WL 576089, at *2 (citing *Rosner v. Paley,* 65 N.Y.2d 736, 738, 492 N.Y.S.2d 13, 481 N.E.2d 553 (1985)). " 'An attorney ... is not held to a rule of infallibility, and is not liable for an honest mistake of judgment where the proper course of action is open to reasonable doubt.' " *Estate of Re,* 958 F.Supp. at 921 (quoting *DaSilva v.*

*Suozzi, English, Cianciulli,* 233 A.D.2d 172, 649 N.Y.S.2d 680. 683 (1st Dep't 1996)).

█ "The general rule is that an attorney may be held liable for ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action." *Bernstein v. Oppenheim & Co.,* 160 A.D.2d 428, 554 N.Y.S.2d 487, 489–90 (1st Dep't 1990) (citing *Grago v. Robertson,* 49 A.D.2d 645, 370 N.Y.S.2d 255 (3d Dep't 1975)). By contrast, allegations that amount to nothing more than plaintiff's "dissatisfaction with strategic choices ... do not support a malpractice claim as a matter of law." *Id.* at 490. " '[W]here it is clear that the attorney exercised his or judgment reasonably as to how to proceed, summary judgment should be granted dismissing the action.' " *Iannacone v. Weidman,* 708 N.Y.S.2d 723, 724 (2d Dep't 2000) (quoting *Rubinberg v. Walker,* 252 A.D.2d 466, 676 N.Y.S.2d 149 (1st Dep't 1998)). Findings of fact are unnecessary where a court concludes that an attorney's conduct was "reasonable ... as a matter ,of law." *Bernstein,* 554 N.Y.S.2d at 489. A plaintiff's "kitchen sink approach cannot overcome this basic restraint on a claim of malpractice," and summary judgment is appropriate where the supposed errors by counsel were not "nearly so egregious that they could now be considered as unreasonable or otherwise sufficient to sustain a claim for malpractice." *Estate of Re,* 958 F.Supp. at 921.

In the case at bar, Hatfield alleges that Herz breached his duty to Hatfield, insofar as he:

failed to properly prepare the Action for trial, failed to call as witnesses certain persons whose testimony would have provided a complete defense for Mr. Hatfield, failed to introduce into evidence documents which would have provided a complete defense for Mr. Hatfield, failed to consult with Mr. Hatfield (who is an experienced criminal trial

lawyer) concerning the tactics and strategy of the defense, failed to file and litigate various pre-trial motions addressed to the insufficiency of the complaint which would have narrowed the issues for trial and perhaps caused the entire action to be dismissed, and failed and refused to demand a jury trial (to which Mr. Hatfield was entitled) although instructed to demand a jury trial by Mr. Hatfield.

Compl. ¶ 11. The Court addresses each of these allegations in turn.

## A. Failure to Prepare the Action for Trial

██ In his complaint, Hatfield vaguely asserts that Herz failed adequately to prepare for trial of the *Milliken* case. In support of his motion for summary judgment, Herz offers his own affidavit chronicling the steps he undertook to prepare for trial. *See* Herz Aff. ¶¶ 28–38. Although he disputes two minor details contained in Paragraphs 33 and 34 of Herz's Local Rule 56.1 Statement, Hatfield otherwise admits Herz's account of his trial preparation. *See* Pl. 56.1 Stmt. ¶¶ 1–3. The parties agree that Herz: prepared and served Hatfield's answer in the *Milliken* action, *see* Def. 56.1 Stmt. ¶ 18 & Exh. 11; prepared and served discovery demands in the *Milliken* action, see *id.* ¶ 19 & Exh. 12–13; supervised pre-trial discovery and motion practice in the *Milliken* action, *see id.* ¶ 20; had at least six telephone conferences with Hatfield, *see id.* ¶ 21; engaged in frequent correspondence with Hatfield prior to trial, *see id.* ¶ 22 & Exh. 20–27; met personally with Hatfield on at least two occasions to prepare for his deposition, *see id.* ¶ 23; defended Hatfield at his deposition, *see id.* ¶ 24; defended Marschner and Carol Paton's depositions and took Milliken's deposition, *see id.* ¶ 25; discussed the case and defense strategy with Hatfield and Marschner several times on the days of these depositions, *see id.* ¶ 26;

communicated with co-op attorney Robert S. Robbin, Esq., at least twice to coordinate trial strategy, *see id.* ¶ 32; Pl. 56.1 Stmt. ¶ 2; reviewed relevant documents and deposition transcripts, *see* Def. 56.1 Stmt. ¶ 34; Pl. 56.1 Stmt. ¶ 3;[2] and participated in four days of pre-trial proceedings and prepared subpoenas and a pre-trial memorandum of law, *see* Def. 56.1 Stmt. ¶ 35 & Exh. 28.

Hatfield not only admits Herz's account of the pre-trial work he performed, but actually wrote to Herz at the conclusion of the trial to praise him for the job he had done:

> I have carefully read the proposed Findings of Fact and your memorandum and I feel, just as I did when I listened to your summation, that you have convincingly and cogently portrayed this case in the light most favorable to our side. Before the judge renders his decision, I want you to know I am very grateful for your zealous representation of me and the other members of the coop. You did a wonderful job of absorbing and understanding the vast array of useless facts. More important, you found the fundamental structure of the case that may prevail in the long run.

Def. Mot., Exh. 34. The fact that Hatfield—himself a seasoned trial attorney and former state court judge in North Carolina—was thoroughly pleased with defendant's representation, up until the trial judge rendered his decision, suggests a *post hoc* effort to blame trial counsel for an unfavorable outcome, notwithstanding Herz's adequate preparation. Hatfield's allegation that Herz failed adequately to prepare for trial is not only unsupported by Herz's uncontroverted account of the work he performed, but is undermined by Hatfield's own statements to the contrary.

Because Hatfield has failed to establish the applicable standard of care, the Court

---

**2.** Hatfield disagrees with Herz's statement that he reviewed "all the relevant documents and deposition transcripts," Def. 56.1 Stmt.

¶ 34, but admits that Herz reviewed some documents and transcripts in preparation for trial. Pl. 56.1 Stmt. ¶ 3.

inquires whether a jury could reasonably find that Herz's trial preparation was so inadequate that it could not satisfy any standard of care. Based on the undisputed facts of Herz's trial preparation, the Court finds there is no support for a finding that Herz breached his duty of care, and Herz is entitled to summary judgment on this theory of the case.

## B. Failure to Call Witnesses

Hatfield alleges that Herz failed to call as witnesses "certain persons whose testimony would have provided a complete defense" to the claims raised in the underlying action. Compl. ¶ 11. In his brief in opposition to summary judgment, Hatfield mentions only two such prospective witnesses: Robert S. Robbin, Esq., the attorney representing the co-op "throughout the events at issue in the Milliken Action," Pl. Br. at 3, and Ed Marschner, Hatfield's co-defendant in the underlying action.[3]

### 1. Robert S. Robbin, Esq.

■ Hatfield contends that his reliance on the advice of co-op counsel Robert S. Robbin, Esq., shielded him from liability for his conduct with respect to Sandy Milliken's proposed sublease, but that Herz's failure to call Robbin as a witness at trial deprived him of this "complete defense" to Milliken's claims. Hatfield maintains that "reliance on the advice of counsel insulates officers and directors of a cooperative corporation from any potential liability for acts taken in their corporate capacity."

3. At his deposition, plaintiff identified numerous others whom he claims should have been called as witnesses in the underlying action. See Hatfield Dep. at 337–56, 376–84. In his brief, however, plaintiff restricts this argument to Marschner and Robbin. Because plaintiff does not mention any other persons in his opposition to the instant motion, let alone suggest why defendant's decision not to call such persons as witnesses might constitute malpractice, the Court considers only plaintiff's argument regarding Marschner and Robbin.

4. Hatfield also suggests that Herz's failure to call Robbin was malpractice because he

Pl. Br. at 5 (citing cases). In essence, Hatfield argues that because he and Marschner relied on Robbin's advice in their handling of the sublease issue, they are immune from liability in connection therewith.

■ Herz argues that reliance on the advice of counsel was not a viable defense, in large part because much of Hatfield and Marschner's questionable conduct occurred before the co-op retained Robbin, and because Hatfield continued to direct the sublease negotiations without consulting Robbin, see Def. Br. at 13–14 (citing Herz Aff. ¶¶ 59–66), in an attempt " 'not to unduly generate legal fees.' " Def. 56.1 Stmt. ¶ 16 (quoting Hatfield Dep.); Pl. 56.1 Stmt. ¶ 1 (admitting truth of Def. 56.1 Stmt. ¶ 16). Nonetheless, it is uncontested that Herz heeded Hatfield's wishes and presented the "reliance on counsel" defense to Justice Tolub in his opening statement, see Trial Tr. at 56–57, through the presentation of witnesses and evidence from Robbin's files, see Def. Br. at 14 (citing Trial Tr. at 175, 197, 206, 214, 323 & Tr. Exh. 14), and in his post-trial submissions. See Def. Mot. Exh. 32 ¶¶ 11, 25, 70, 71 & Exh. 33 at 3, 12, 14–16, 21. It is also clear that Justice Tolub was made aware of Robbin's role in advising the co-op. See Trial Tr. at 857. Hatfield nonetheless argues that Robbin's testimony was necessary · to establish the defense, and that Herz's failure to call him as a witness constituted actionable negligence.[4]

"risked a motion to strike the Hatfield testimony based precisely on his failure to live up to his offer of proof, to supply the 'connection' which conditioned the receipt of the evidence." Pl. Br. at 11–12. In essence, Hatfield argues that his own testimony regarding Robbin's work was admitted subject to connection, and that, by failing to call Robbin, Herz risked a possible motion to strike Hatfield's testimony on this point. Even assuming, arguendo, that Herz's failure to connect Hatfield's testimony could constitute actionable negligence, it is undisputed that Milliken did not move to strike, and that Hatfield's testimony was received and considered by Justice Tolub. Because Hatfield can-

Assuming without deciding that this defense was available to Hatfield, there is no support for Hatfield's contention that the argument absolutely required Robbin's testimony. Although Herz did not believe that Hatfield's alleged reliance on counsel provided him with a good defense, he agreed to present the argument at trial. Whether or not to call Robbin as a witness to bolster this argument was a strategic decision for Herz to make. Even assuming, *arguendo*, that failure to raise the defense would constitute malpractice, Herz's failure to make the argument in precisely the fashion now urged by Hatfield would not, as a matter of law, give rise to such a claim. *See, e.g., 675 Chelsea,* 1997 WL 576089, at *5 ("To suggest that defendant ... argued the point without the proper emphasis[ ] would amount to exactly the sort of "second-guessing" that is unacceptable in the context of a malpractice action"); *Estate of Re,* 958 F.Supp. at 923 ("In short, plaintiffs' hindsight determination that defendants were not 'rigorous' enough or quick enough in advancing the disputed position is precisely the sort of 'second-guessing of counsel's strategic judgment ... [that] do[es] not rise to the level of legal malpractice.' ") (quoting *Pacesetter Communications Corp. v. Solin & Breindel, P.C.,* 150 A.D.2d 232, 541 N.Y.S.2d 404, 406 (1st Dep't 1989)).[5]

As Herz has demonstrated, Justice Tolub was sufficiently aware of Robbin's role as counsel to the co-op, and Hatfield's "reliance on counsel" defense was squarely before the court. Although the parties clearly differ as to whether calling Robert Robbin was essential to the success of the "reliance on counsel" defense, their difference of opinion does not raise a genuine issue of material fact. *See Rodriguez v. Fredericks,* 213 A.D.2d 176, 623 N.Y.S.2d 241, 242 (1st Dep't 1995) ("We disagree ... that summary judgment in favor of defendant is precluded by factual disputes arising out of the parties' disagreement as to defendant's choice of strategies.") Because reasonable minds might differ as to the optimal strategy for trial, Herz's decision not to call Robbin was not negligent. " '[D]efendant's determination not to call the witness in the underlying action was clearly a reasonable strategic decision which did not constitute malpractice.' " *Estate of Re,* 958 F.Supp. at 923 (quoting *L.I.C. Commercial Corp.,* 609 N.Y.S.2d at 302); *see also A.H. Harris & Sons Inc. v. Burke, Cavalier, Lindy & Engel P.C.,* 202 A.D.2d 929, 610 N.Y.S.2d 888, 888–89 (3d Dep't 1994) ("Plaintiff's sole allegation of negligence is its assertion that defendants failed to call available witnesses to the stand at trial. However, given an attorney's freedom to choose among several strategies or courses of action, the mere allegation that defendants failed to present admissible evidence, without pleading how or why such failure fell below the ordinary and reasonable skill and knowledge commonly possessed in the legal profession, does not properly state a cause of action for legal malpractice.")

Accordingly, Hatfield's dissatisfaction with Herz's decision not to call Robbin as a witness is insufficient as a matter of law to state a claim for legal malpractice.

### 2. Edward Marschner

█ The same legal standard applies to Herz's strategic choice not to call Ed Marschner as a defense witness in the underlying action. Hatfield suggests that "it is hard to understand how Mr. Herz

not possibly establish that Herz's failure to connect Hatfield's testimony through Robbin's was the "but for" cause of his alleged injury, his argument lacks even visceral appeal and disappears on further analysis.

**5.** In *Estate of Re,* Judge Sotomayor further noted, "Moreover, defendants advanced the argument, merely declining to do so with the emphasis plaintiffs now deem appropriate. There is no evidence from which a trier of fact could infer that this same argument, rejected when set out in a page, would have been dispositive if delivered with a different gloss and with greater zeal." 958 F.Supp. at 924.

could have persisted in that tactical view when Mr. Marschner was actually in court throughout the trial, and Mr. Milliken's counsel elected *not* to call him to the stand on plaintiff's case." Pl. Br. at 3 (internal citation omitted) (emphasis in original).

Herz concluded that Marschner's testimony was not only unnecessary, *see* Herz Aff. ¶¶ 56–57, but that it might have been damaging to the defendants in the underlying action. *See id.* ¶¶ 49–54. Herz felt that Marschner's demeanor and "selective memory" would make him an unsympathetic and potentially incredible witness, and that his questionable conduct with respect to the underlying matter would have led to extremely damaging testimony on cross-examination. *See id.; see also Rodriguez,* 623 N.Y.S.2d at 242 (validating attorney's decision not to call witnesses that "would have presented credibility difficulties.") At his deposition, co-op attorney Robert Robbin agreed that Marschner "was not a good witness" because he was "too much of a lawyer." Robbin Dep. at 90.

Hatfield offers no support for his contention that Marschner's testimony was essential to his defense, nor does he argue that Herz's strategic considerations in choosing not to call Marschner were misplaced. On the contrary, Hatfield concedes that Marschner would have made a bad witness because of his "pedantic" manner and because he took "a long time to say things." Hatfield Dep. at 336–37. Given Hatfield's concession that Marschner's testimony might have been counterproductive, and absent any showing that Herz's decision not to call Marschner was an unreasonable strategy, no jury could find that Herz committed malpractice by failing to call this witness. *See*

*Estate of Re,* 958 F.Supp. at 923; *L.I.C. Commercial,* 609 N.Y.S.2d at 302; *A.H. Harris,* 610 N.Y.S.2d at 888–89. Accordingly, Herz is entitled to summary judgment on this theory of Hatfield's case.

## C. Failure to Introduce Documents Into Evidence

In his brief, Hatfield argues that he is "entitled to have a jury determine whether the failure of his trial counsel, Stuart Herz, to place into evidence critical documents ... was negligent, and the cause of the judgment against him." Pl. Br. at 9.

Hatfield charges that Herz failed to introduce "a number of critical documents which would have established that Mr. Robbin advised [him] on the key issues in the underlying action." Pl. Br. at 6. Hatfield ultimately only describes two such documents, which purportedly demonstrate that Robbin provided advice with respect to the sublease issue, upon which the co-op relied.[6] Hatfield admits that one of these two documents, a six-page fax from Robbin, cannot be located by Mr. Robbin or any of the parties to this action or the underlying action. *See id.* at 7 n. 1. The second "critical" document identified by Hatfield is a draft of four alternative sublease fee and "flip tax" proposals drafted by Robbin for the benefit of the co-op, which Hatfield likewise claims Herz should have offered into evidence for the purpose of bolstering Hatfield's "reliance on counsel" defense.

Needless to say, if the first document was missing, Herz could not be expected to introduce it into evidence. Nevertheless, Herz clearly acted within his discretion in selecting the evidence to be introduced at

---

6. Hatfield suggests in his deposition that Herz also should have introduced into evidence an audiotape of a May, 4, 1992, telephone conversation between Hatfield and Milliken. *See* Hatfield Dep. at 406–11. Herz concluded that Hatfield's profane language and veiled threats during the course of the conversation would negatively impact Hatfield's defense, and reasonably opted not to introduce the recording into evidence. *See* Herz Aff. ¶¶ 77–81. Although Hatfield's failure to mention this consideration even once in his pleadings is perhaps sufficient for Herz to prevail on this point, the Court notes that, for the reasons stated below, Herz's strategic decision not to introduce the tape cannot give rise to a malpractice claim.

trial. Although Hatfield attempts to suggest that these are "smoking gun" exhibits that could have exonerated him, it is clear that such evidence would have been cumulative, given that the nature of Robbin's representation of the co-op and Hatfield's purported reliance thereon were presented to Justice Tolub by other means. As such, Herz's decision not to offer either or both of these documents into evidence was a reasonable strategic choice, not subject to Hatfield's second-guessing after the fact. *See, e.g., A.H. Harris,* 610 N.Y.S.2d at 888–89; *Bernstein,* 554 N.Y.S.2d at 490. Moreover, as discussed *supra,* Herz discharged any duty he might have had to advance Hatfield's "reliance on counsel" defense; Hatfield's retrospective suggestion that Herz should have raised the defense more vociferously, or by offering additional evidence, is insufficient as a matter of law to state a claim of malpractice. *See 675 Chelsea,* 1997 WL 576089, at *5; *Estate of Re,* 958 F.Supp. at 923.

Hatfield himself acknowledged to Herz that reasonable legal minds might differ as to the evidence to be introduced at trial:

> I did not always agree with your decisions about evidence, as you know, but hell, we're lawyers! What struck me more than anything else was your conviction and the forceful and very honest way you put forth our position. For that I want to sincerely thank you.

Def. Mot., Exh. 34. Because Hatfield's disagreement with Herz's strategic choices regarding evidence is insufficient as a matter of law to state a claim for legal malpractice, Herz is entitled to summary judgment on this theory of Hatfield's case.

### D. Failure to Consult with Hatfield

▮ Hatfield maintains in his complaint that Herz failed adequately to consult with him before and during the trial. In support of the instant motion, Herz describes in detail the communications he shared with Hatfield before and during the trial, with reference to numerous letters, phone calls, and face-to-face meetings. *See* Def. 56.1 Stmt. ¶¶ 21–24, 26, 40–43, 47. Hatfield fails to contest Herz's account, leaving no factual issue as to the level of communication between the attorney and his client before and during the trial. *See* Pl. 56.1 Stmt. ¶ 1.

▮ Although "liability for attorney malpractice is appropriate if an attorney fails to adequately advise his client." *Ayala v. Fischman,* 1998 WL 726005, at *3 (S.D.N.Y. Oct.15, 1998) (citing *Heine v. Newman, Tannenbaum, Helpern, Syracuse & Hirschtritt,* 856 F.Supp. 190, 194–95 (S.D.N.Y.1994), *aff'd,* 50 F.3d 2 (2d Cir. 1995)); *Hart v. Carro, Spanbock, Kaster & Cuiffo,* 211 A.D.2d 617, 620 N.Y.S.2d 847, 849 (2d Dep't 1995), and "[a]n attorney has a duty to keep his client well informed and furnish him with all information material to his cause," *id.* (citing *Spector v. Mermelstein,* 361 F.Supp. 30, 39–40 (S.D.N.Y. 1972)), the conclusory allegations contained in Hatfield's complaint are critically undermined by his failure to contest Herz's account of the frequent contact and consultation they shared. Accordingly, the Court concludes that no reasonable jury could find that Herz failed to consult with his client, and Herz is entitled to summary judgment on this theory of the case.

### E. Failure to File and Litigate Various Pre–Trial Motions

▮ Hatfield contends that Herz failed to bring pre-trial motions that plaintiff alleges would have disposed of the *Milliken* action. Herz notes that the only pre-trial dispositive motions he could have brought on Hatfield's behalf were a motion to dismiss pursuant to N.Y. C.P.L.R. 3211 and a motion for summary judgment pursuant to N.Y. C.P.L.R. 3212. Herz concluded that neither of these motions was likely to succeed, and that it was inappropriate to bring them.

A motion to dismiss under Rule 3211 would only have succeeded if Milliken's complaint had failed, on its face, to state a claim. Because Herz properly concluded that Milliken's allegations, *if proven true,*

would state a claim, he decided it was inappropriate to move for dismissal. *See* Def. Br. at 17 (citing *Leon v. Martinez*, 84 N.Y.2d 83, 614 N.Y.S.2d 972, 638 N.E.2d 511 (1994); *Foley v. D'Agostino*, 21 A.D.2d 60, 248 N.Y.S.2d 121 (1st Dep't 1964)). To succeed on a Rule 3212 summary judgment motion, Hatfield would have been required to demonstrate that there was no issue of fact requiring trial. *See City University of New York v. Finalco, Inc.*, 93 A.D.2d 792, 461 N.Y.S.2d 830 (1st Dep't 1983). As Herz notes, Milliken's claims were largely supported by his own testimony at trial. Had Hatfield moved for summary judgment, Milliken undoubtedly would have offered his own affidavit in opposition. Because Milliken's testimony was sufficiently credible to persuade Justice Tolub to enter judgment in his favor, there is no doubt that the same testimony would have satisfied the lesser burden required to defeat Hatfield's motion for summary judgment. At the very least, as Robert Robbin admitted at his deposition, Milliken and Hatfield's conflicting accounts of the events in issue would have raised a triable issue of fact and required the court to deny Hatfield's motion. *See* Robbin Aff. at 92–93.

It is clear that Hatfield lacked a good-faith basis for bringing these motions, and Herz acted both ethically and reasonably in deciding not to file them. *See Bernstein*, 554 N.Y.S.2d at 490 (attorney's decision not to bring an unnecessary summary judgment motion was not malpractice). Because these motions clearly would have been futile, and because "[a]ttorneys are entitled to significant discretion in determining which positions to advance on the behalf of their clients, and in determining how best to advance those positions," *675 Chelsea*, 1997 WL 576089, at *2 (citing *Rosner*, 65 N.Y.2d at 738, 492 N.Y.S.2d 13, 481 N.E.2d 553), Herz cannot be held liable for his decision not to make these pretrial motions. Because no jury could reasonably find that Herz breached his duty by declining to file pre-trial dispositive mo-

tions, Herz is entitled to summary judgment on this theory of Hatfield's case.

## F. Failure to Demand a Jury Trial

■ Hatfield argues that he was entitled to a jury trial, and that Herz's failure to demand one constitutes actionable negligence. In essence, Hatfield claims that a jury would not have awarded punitive damages against him, as did Justice Tolub.

■ Herz argues that Hatfield was not entitled to a jury trial because Milliken's primary claim was for equitable relief—namely, an injunction forcing the co-op to approve his sublease. Although defendant invites this Court to simply conclude, as a matter of law, that Hatfield was not entitled to a jury trial, it declines to do so. Whereas Milliken may have waived his own right to a jury trial by including equitable claims in his complaint, *see* N.Y. C.P.L.R. 4102(c); *Zimmer–Masiello, Inc. v. Zimmer, Inc.*, 164 A.D.2d 845, 559 N.Y.S.2d 888, 889–90 (1st Dep't 1990), the defendants in the underlying action retained *their* right to trial by jury of those claims or parts of claims sounding in law. *See DiMenna v. Cooper & Evans Co.*, 220 N.Y. 391, 115 N.E. 993 (N.Y.1917); *L.C.J. Realty Corp. v. Back*, 37 A.D.2d 840, 326 N.Y.S.2d 28, 29–30 (2d Dep't 1971). Thus, although they were not entitled to a jury trial of the entire action, Hatfield and Marschner might well have succeeded in demanding that certain claims or parts of claims be decided by a jury. Nonetheless, Herz is correct to observe that the "thrust" of Milliken's complaint was an equitable claim seeking to compel the co-op to approve the proposed sublease. Accordingly, the core of Milliken's case would have remained before Justice Tolub even if Herz had timely demanded a jury trial on those claims or parts of claims sounding in law.

While the Court agrees with Hatfield that he may have been entitled to a jury trial on some issues, Herz's conclusion that Hatfield was not entitled to try the heart of the case to a jury was not unreasonable,

especially given the complexity of this area of law. Applying New York law, reasonable attorneys might disagree as to whether the right to a jury trial attaches to a given claim, based on the arcane consideration of how the claim would have been characterized prior to the adoption of the 1894 New York Constitution. *See, e.g., In re Sackler,* 222 A.D.2d 9, 644 N.Y.S.2d 796, 798 (2d Dep't 1996); *John W. Cowper Co. v. Buffalo Hotel Dev. Venture,* 99 A.D.2d 19, 471 N.Y.S.2d 913, 915 (4th Dep't 1984). As Hatfield concedes, "New York law on the right to trial by jury is complex and not easily predictable." Pl. Br. at 13.

Even assuming, *arguendo,* that Herz erred in concluding that Hatfield was not entitled to a jury, there is no evidence to support Hatfield's contention that Herz's decision not to demand a jury was malpractice. Although Herz *could* have demanded a jury trial, it does not follow that he was professionally obligated to do so. An attorney's choice between a bench trial and jury trial is very much a strategic decision, one on which reasonable minds might differ.

■ In a similar vein, the First Department has rejected malpractice claims based on an attorney's decision to proceed in court rather than in arbitration, holding that this choice of forum was not malpractice. *See Stroock & Stroock & Lavan v. Beltramini,* 157 A.D.2d 590, 550 N.Y.S.2d 337, 338 (1st Dep't 1990). Likewise, an attorney's decision to proceed before a single arbitrator rather than a panel of arbitrators does not, as a matter of law, give rise to a claim of malpractice. *See Estate of Re,* 958 F.Supp. at 921.

■ To succeed on his claim, Hatfield bears the heavy burden of proving by competent evidence that a jury would have been more sympathetic to his position than the trial judge. As Herz observes, there is simply no reason to believe that a jury would have found Hatfield's story any more credible than did Justice Tolub. Because Herz's decision to try Hatfield's case before the bench was a reasonable exercise of his discretion, and because Hatfield cannot demonstrate that this decision constituted a breach of Herz's duty of care to him, Herz is entitled to summary judgment on this theory of Hatfield's malpractice case.[7]

7. The Court acknowledges the right to a jury trial is one of constitutional dimension. *See, e.g., Merex A.G. v. Fairchild Weston Sys., Inc.,* 29 F.3d 821, 823–24 (2d Cir.1994) (citing *Parsons v. Bedford,* 28 U.S. (3 Pet.) 433, 446–47, 7 L.Ed. 732 (1830) (Story, J.)) Nonetheless, in the malpractice context, an attorney's failure to exercise a right on behalf of his client must be judged by the same standard as any other alleged breach of duty. Although the Court has not found a case applying New York law to this "novel issue concerning the law of legal malpractice," the Court finds a recent opinion by Chief Judge Posner of the United States Court of Appeals for the Seventh Circuit to be highly persuasive on this point. *See Jones Motor Co. v. Holtkamp, Liese, Beckemeier & Childress, P.C.,* 197 F.3d 1190, 1191 (7th Cir.1999) (applying Illinois law). In *Jones Motor,* as here, plaintiffs sued their attorney for failing to demand a jury trial on their behalf in the underlying action against them. Inquiring as to why Illinois, like New York, "allows a defendant in a civil suit to elect to be tried by a jury even though the plaintiff would prefer a bench trial," Judge Posner concluded that "[t]he answer must be that each party is deemed entitled to seek the 'protection' of the jury against being tried by a judge." *Id.* at 1194 (citing "Developments in the Law: The Civil Jury," 110 Harv. L.Rev. 1408, 1429–32 (1997)). The Seventh Circuit concluded in *Jones* that the attorney's waiver of his client's jury trial right in this context did not give rise to a claim for malpractice case because "[t]here is variance among judges as well as among juries, and it is very hard to say that the average jury is likely to be more favorable to a defendant than the average judge." *Id.* Where, as here, a defendant does not know at the time a jury trial must be demanded which judge will otherwise hear his case, it is impossible to say, looking forward, that one option is certain to produce a more favorable result than the other. Noting that this "precise issue has never arisen before, so far as the parties' research or our own discloses, either in Illinois or in any other jurisdiction," Judge Posner hesitated to conclude that the waiver of a jury trial right could *never* give rise to a malpractice claim, but noted that the district court properly granted summary judgment where plaintiff offered "no credible evidence of what a jury

### G. Defendant's "Erroneous" Concession to Justice Tolub

■ Hatfield raises one additional allegation of malpractice for the first time in his brief opposing Herz's motion for summary judgment. Although the argument is not mentioned in his complaint, Hatfield now contends that Herz erroneously conceded at trial "that a requirement that a sublease fee or flip tax be paid as a condition precedent to approval of the sublease would be illegal, and would justify an injunction directing approval of the sublease." Pl. Br. at 4.

During Herz's opening statement at trial of the underlying case, Justice Tolub interrupted Herz's presentation and asked several pointed questions regarding the law governing Milliken's N.Y. Bus. Corp. Law § 717 claim. *See* Trial Tr. at 949–53. Justice Tolub and Herz engaged in a brief colloquy regarding the law. *See id.* Hatfield now claims that Herz lost the case by inaccurately stating the law to Justice Tolub during this exchange.

Herz ultimately conceded to Justice Tolub that it might, under certain circumstances, have been unlawful to condition Milliken's right to sublease on some sort of payment to the co-op, but argued that Milliken had no cause of action both because the sublease was never executed and because the co-op had not acted in bad faith. *See id.* In Hatfield's view, Herz should have argued that it was entirely lawful to condition the sublease on the payment of a "flip tax" to the co-op, in reliance on the "dispositive" First Department case of *Holt v. 45 East 66th Street Owners Corp.*, 161 A.D.2d 410, 555 N.Y.S.2d 340 (1st Dep't 1990).

Despite Hatfield's insistence that the *Holt* case authorized the conduct of the co-op in the Milliken matter, *Holt* is easily distinguished on its facts. The plaintiff co-op in *Holt* approved a "flip tax," (*i.e.*, a fee paid to the co-op by a shareholder upon sale or transfer of his shares) before any transfer was contemplated. *Id.* at 341. When the defendant negotiated a contract for the sale of his shares, he included a provision for the flip tax. *See id.* Subsequently, the co-op imposed a generally applicable flip tax, which the defendant refused to pay. *See id.* The First Department held that the flip tax was lawful and enforceable, provided it was enacted before the sale was consummated. *See id.* Hatfield argues that, because Milliken's proposed sublease had not been executed, the co-op was entitled to enact and impose any fee it wished, as long as it was imposed uniformly on all shareholders. The *Milliken* suit presented a vastly different set of circumstances than *Holt*, insofar as the proposed transfer fee was not conceived as a general policy, but apparently as a means to extract money from Milliken and/or frustrate his effort to sublease his unit in the co-op. Hatfield maintains that the co-op was authorized, under *Holt*, to "tax" Milliken's lucrative sublease, provided the tax: i) was enacted before the sublease was executed; and ii) the co-op applied it uniformly. Accordingly, Hatfield argues that Herz misstated the law by conceding to Justice Tolub that it would have been unlawful for the co-op to attempt to extract money from Milliken. This argument grossly mischaracterizes Herz's responses to Justice Tolub's inquiries. Herz merely agreed with Justice Tolub that the co-op could not have conditioned approval of the sublease on Milliken's agreement to pay a fee "unless the shareholders approved and adopted the by-laws for a flip tax or a sublet fee," which the shareholders had not done. Trial Tr. at 950. This remark by Herz was entirely consistent with *Holt* and the governing law. Justice Tolub next asked whether Milliken could succeed on his complaint if he demonstrated that the co-op voted down the proposed sub-

---

might have awarded." *Id.* The same is true in the case at bar, where Hatfield does not, and likely cannot, offer any evidence to support his argument that he would have fared better before a jury.

lease solely because they wanted more money. *See id.* at 950–51. Herz replied that Milliken would be entitled to judgment if the court found that the co-op's desire for more money "was the sole basis of their refusal to approve [the] lease" *and* that they "acted in bad faith." *Id.* at 952. While *Holt* authorizes the imposition of a "flip tax" under certain circumstances, it certainly does not relieve a co-op of its obligation to deal in good faith with its members. Not only was Herz's response to Justice Tolub's question correct as a matter of law, but it did not—as Hatfield now suggests—concede bad faith on the part of the co-op. Rather, Herz answered the judge's questions as to the proper application of the law *assuming plaintiff proved his allegations were true.* Herz did not concede that Milliken's allegations were true, and in fact argued vigorously against them. *See* Trial Tr. at 949–50, 1724–26. Nonetheless, Herz was forced to answer Justice Tolub's questions as the judge had framed them: "Assuming that is correct, accepting [Milliken's] statement of facts. I'm not saying that they're proved. I am saying if you accept that concept, if you accept those facts, would he not be successful in this case?" *Id.* at 951–52.

 With the benefit of hindsight, Hatfield imagines that Herz could have approached the judge's questions differently, and perhaps used this as an opportunity to reshape the judge's view of the law. Nonetheless, the standard for malpractice is not whether the defendant might have better served his client by choosing a somewhat different course, but whether the course chosen deviated from the standard of care. Although Hatfield makes no offer of proof as to the relevant standard of care, Herz's good-faith effort to respond to Justice Tolub's questioning is so clearly reasonable that no jury could find it to constitute malpractice. Even if another attorney could have turned Justice Tolub's questions to Hatfield's advantage, it is clear that " '[a]n attorney . . . is not held to

a rule of infallibility, and is not liable for an honest mistake of judgment where the proper course of action is open to reasonable doubt.' " *Estate of Re,* 958 F.Supp. at 921 (quoting *DaSilva,* 649 N.Y.S.2d at 683). Moreover, Herz "cannot be faulted for the nature and quantum of evidence offered against his clients." *Rodriguez,* 623 N.Y.S.2d at 242. Justice Tolub asked Herz how the law would apply if Milliken proved his allegations by a preponderance of the evidence. It was not Herz's fault that there existed sufficient evidence to support a finding of bad faith on the part of his clients. For these reasons, Herz is entitled to summary judgment on this theory of Hatfield's case.

### III. CAUSATION AND INJURY

 Because Herz need only demonstrate Hatfield's inability to prove *one* of the three elements of a legal malpractice case, *see, e.g., Ostriker,* 685 N.Y.S.2d at 471, and Herz has amply demonstrated that Hatfield cannot establish a breach of duty, the Court need not consider at length whether, but for the alleged negligence by Herz, Hatfield would have avoided the injury he claims to have suffered. Hatfield contends that, had Herz conducted his defense differently, Hatfield would have prevailed at trial and avoided the punitive damage award.

Even if Hatfield had succeeded in raising a factual question as to whether Herz breached his duty of care, he would not be entitled to a trial on the issue of causation. Having reviewed the trial transcript from the *Milliken* case, the evidence and arguments presented at trial, and the evidence and arguments Hatfield urges *should* have been presented, the Court sees no evidence to support a finding that, but for the alleged misfeasance by Herz, Hatfield would have prevailed in the *Milliken* suit. Hatfield fails to carry his burden of offering "evidentiary proof" that "a proper defense would have altered the result" of the proceeding. *See Thaler & Thaler,* 617 N.Y.S.2d at 606–07.

Indeed, Justice Martin Schoenfeld of the Supreme Court, New York County, recent-

**190**

ly granted summary judgment dismissing Hatfield and Marschner's legal malpractice suit against Haas, Greenstein, for precisely this reason. *See Hatfield v. Haas, Greenstein, Cohen & Gerstein, P.C.,* No. 112533/96 (N.Y.Sup.Ct. July 7, 2000). In his opinion, Justice Schoenfeld credited Justice Tolub's finding that "the totality of circumstances showed bad faith by the co-op in general and the instant plaintiffs in particular, each of whom owned a significant percentage of the co-op's shares and, thus, stood to gain by extracting money from the hapless Milliken." *Id.* at 2. Although Haas, Greenstein's negligence in failing to perfect Hatfield and Marschner's appeal was not contested, Judge Schoenfeld granted summary judgment in the law firm's favor upon concluding that the appeal would have been unsuccessful anyway. *See id.*

Here, the Court is faced with the similar question whether Hatfield would have prevailed at trial if Herz had conducted his defense in precisely the manner now urged. Because the weight of the evidence presented at trial supported Justice Tolub's conclusion that the defendants in the *Milliken* case acted in bad faith by withholding consent to Milliken's sublease, it is entirely unlikely that the fine-tuning now proposed by Hatfield, with the benefit of hindsight, would have produced a different result.

### CONCLUSION

For the reasons stated above, defendant's motion for summary judgment on plaintiff's claims is hereby GRANTED, and plaintiff's action is dismissed in its entirety. Third-party defendant and defendant/third-party plaintiff's cross-motions for summary judgment are hereby DENIED as moot. The Clerk of Court is directed to enter judgment in accordance herewith.

**SO ORDÉRED.**