OPINION OF THE COURT
Diane A. Lebedeff, J.
Defendant Daly, Bamundo, Dalton & Schermerhorn, LLP (the Daly firm), and three individual lawyers employed by the firm at the relevant time, move for summary judgment dismissing the legal malpractice claim brought by its former client, Forest City Enterprises, Inc., and request imposition of sanctions for bringing a frivolous action. Plaintiff seeks sanctions for the frivolous demand.
It is well established that to obtain summary judgment under CPLR 3212 (b), the movant must make a “tender of evidentiary proof in admissible form” to “establish [a] cause of action . . . ‘sufficiently to warrant the court as a matter of law in directing judgment’ in [movant’s] favor” (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067 [1979]). The party “opposing a motion for summary judgment must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact” (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Although this summary judgment motion has been brought prior to court-ordered discovery, significant material has been exchanged between the parties and plaintiff does not object that the motion is premature; the court will proceed accordingly.
Factual Record
Forest City, the owner of the Atlantic Center Shopping Center in Brooklyn (the mall), was represented by the Daly firm in its *153 defense of a negligent security action entitled Allah v Atlantic Ctr. Fort Green Assoc., LP (Index No. 14468/99 [the Allah action]). The plaintiff in that action, El-Shabazz Allah, was a merchant who was robbed and stabbed in the back while opening his kiosk in the mall. Mr. Allah received 26 stitches for the wound, resulting in a four-inch scar, and claimed continuing psychological injuries. After a three-day trial held on a Thursday, Friday, and Monday in June of 2003, the jury returned a verdict of $4,000,000.
Prior to trial, the presiding judge had recommended a settlement in the amount of $75,000, and plaintiff indicated he was willing to settle for that amount. After the verdict, and after denial of Forest City’s motion for judgment notwithstanding the verdict, but while an as-yet unopposed motion to reduce the verdict was on the motion calendar (opposition, exhibit 5, Van Zwaren letter; exhibit 10, Cawsey affidavit, 1Í 7), Forest City settled with Allah for $235,000, which was within the limits of its $250,000 self-insurance retention limit.
Claiming that Forest City itself was not informed of the opportunity to settle for $75,000, or possibly a lower amount of $40,000, prior to trial, and that the Daly firm’s negligent representation deprived it of an opportunity to establish it had no liability, plaintiff seeks refund of about $10,000 paid in attorney’s fees for pretrial representation and the entire amount paid in settlement. It is noted that the defendant firm has not billed or been paid for its representation of plaintiff at the trial.
Unsustainable Malpractice Claims
At the outset, a number of factual allegations clearly will not support a malpractice cause of action, for they are unsustainable on the record. The claim of a failure to communicate that plaintiff would accept a $75,000 settlement offer is fully refuted, and such refutation is unopposed (complaint 1ÍH 19, 20).* Moreover, there is an absence of any assertion by any representative *154 of the plaintiff or its claims adjuster that the $75,000 offer would have been accepted if communicated to the proper person (see Magnacoustics, Inc. v Ostrolenk, Faber, Gerb & Soffen, 303 AD2d 561, 562 [2d Dept 2003]). Accordingly, plaintiff cannot establish damages based on allegations that defendants deprived it of the opportunity to settle the claim for $75,000.
Plaintiff offers no response to defendants’ showing that certain witnesses were not called by the defense because the plaintiff called them to the stand first (complaint 1113) and that other witnesses were in fact called (motion, exhibit C, affirmation of Anthony Van Zwaren, Esq., 1i 3). Plaintiffs pleading that the law firm directed all of its comments on case progress to the adjuster is disproved by plaintiffs own exhibits showing that copies of progress reports were copied to plaintiff (opposition papers, exhibits 1, 2, 4).
In relation to trial preparation, unchallenged law firm invoices do show that time was expended on pretrial preparation (opposing papers, exhibit 3). As to the claim that defendant was late in relation to hiring an investigator a month and a half prior to trial (complaint 1i 14), plaintiff makes no showing of actual prejudice or injury. This omission is significant because a letter by the law firm to the adjuster seeks approval for hiring an investigator; plaintiff neglects to state that the law firm was authorized to hire an investigator without the claims adjuster’s approval therein sought, and does not state such approval was given.
Accordingly, these branches of the complaint must fall.
Colorable Malpractice Claims
Turning to the claims with some facial substance, the burden is on the moving defendants, who seek summary judgment dis *155 missal of a legal malpractice claim, to present evidence in an admissible form establishing that plaintiff is unable to prove at least one of the three elements of a malpractice cause of action (Crawford v McBride, 303 AD2d 442 [2d Dept 2003]). The three elements are “that the attorneys were negligent, that their negligence was the proximate cause of the plaintiffs damages, and that the plaintiff suffered actual damages as a direct result of the attorneys’ actions” (Franklin v Winard, 199 AD2d 220, 221 [1st Dept 1993]). There are three colorable malpractice contentions raised by plaintiff.
First, the pleading asserts that plaintiff might have prevailed in the underlying litigation on the issue of liability had the defense been properly presented. However, in the underlying negligence case, there was a posttrial judicial decision denying a motion to set aside the verdict. In such a denial, the trial court determines that there was a “valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial” (Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]). Additionally, the decision includes a legal determination of the sufficiency of the prevailing party’s case for, on such motion, the “criteria to be applied in making [the legal sufficiency] assessment are essentially [the same as] those required of a Trial Judge asked to direct a verdict” (id.).
It is undisputed that the trial court found the personal injury plaintiff’s case was legally sufficient. Given that the plaintiff here cannot assert that the personal injury plaintiff had no case, plaintiff cannot argue that it could have prevailed in the underlying litigation. This branch of the malpractice claim is unsupportable and must fall.
Second, the plaintiff here asserts that malpractice led to damage because the case was settled for $235,000 and might have been settled for some lower amount. Generally, “[settlement of an action will not preclude an award of damages for legal malpractice where the plaintiff is able to demonstrate that the settlement was caused by the malpractice and resulting damages” (Fusco v Fauci, 299 AD2d 263, 263 [1st Dept 2002] [citation omitted] [malpractice claim dismissed where settlement exceeded stipulated value of claim to client]; Jones, Lang Wootton USA v LeBoeuf, Lamb, Greene & MacRae, 243 AD2d 168, 175 [1st Dept 1998] [posttrial settlement “when compelled by an attorney’s breach of the standard of care, does not present an intervening cause so as to bar a malpractice action”]; Kerson *156 Co. v Shayne, Dachs, Weiss, Kolbrenner, Levy, 59 AD2d 551, 552-553 [2d Dept 1977], affd on concurring op 45 NY2d 730 [1978] [which held “plaintiffs’ cause of action against defendants for legal malpractice must stand or fall on its own merits” and is not barred by settlement of underlying action]).
However, the instant settlement was made prior to full briefing of the motion to reduce the verdict (see Rodriguez v Fredericks, 213 AD2d 176, 178 [1st Dept 1995] [malpractice claim dismissed where malpractice plaintiff voluntarily settled prior to an appeal and “plaintiffs, by their own conduct in voluntarily settling prior to the appeal, precluded defendant from pursuing the very means by which he could have vindicated his representation”], lv denied 85 NY2d 812 [1995]). Had the malpractice plaintiff not settled at this early point, prior to the submission of opposing papers, the personal injury plaintiff would have been forced to state whether any version of the facts could sustain a verdict of $4 million for a stabbing injury requiring 26 stitches and giving rise to nondisabling sequelae and, had the settlement proceeded after decision, the trial judge would have determined the proper level of damages upon the proof presented. Plaintiff’s insistence on the timing of the settlement precluded either event.
Further, the record shows that plaintiff itself reached out for settlement directly, not through defendants, and then advised defendants that it determined the matter should be settled within the self-insured retention limits (Sutherland v Milstein, 266 AD2d 33 [1st Dept 1999] [a client may not hold his or her former attorneys liable for legal malpractice in connection with the settlement of the underlying action where the client had negotiated and controlled the terms of the settlement], appeal dismissed 94 NY2d 898 [2000]). These actions were taken by plaintiff at the conclusion of the trial, not based upon a settlement recommendation of defendants, but on its own volition and after it had available to it the advice of a professional risk manager and its in-house counsel.
“To some extent litigation is a game of chance” (Byrnes v Palmer, 18 App Div 1, 4 [2d Dept 1897], affd 160 NY 699 [1899]). Missing here is any explanation, consistent with the precedent set forth above, of how plaintiff will be able to establish non-speculative damages which would not have occurred “but for” the attorney’s negligence (Reibman v Senie, 302 AD2d 290 [1st Dept 2003] [attorney’s failure to research applicable law not shown to have any impact on client’s ultimate settlement of *157 matter]; see also Between The Bread Realty Corp. v Salans Hertzfeld Heilbronn Christy & Viener, 290 AD2d 380 [1st Dept 2002], lv denied 98 NY2d 603 [2002]; Pellegrino v File, 291 AD2d 60 [1st Dept 2002], lv denied 98 NY2d 606 [2002]). It was plaintiff which ignored the far lower settlement demand and proceeded to verdict, despite its lack of confidence in its counsel. In these circumstances, the timing and independent nature of Forest City’s decision to settle prevents it from being able to demonstrate that it suffered any actual and ascertainable harm as a proximate result of plaintiffs alleged negligent representation (see Rodriguez v Fredericks, supra; Sutherland v Milstein, supra).
The third and final malpractice argument is that defendant committed malpractice by filing a jury demand several years before the case was tried. Generally, a lawyer’s decision regarding the identity of the trier of fact cannot support a malpractice claim (see Stroock & Stroock & Lavan v Beltramini, 157 AD2d 590 [1st Dept 1990] [choice of court, rather than arbitrator, not malpractice]; Jones Motor Co., Inc. v Holtkamp, Liese, Beckemeier & Childress, P.C., 197 F3d 1190 [7th Cir 1999] [failure to demand jury not malpractice]; Hatfield v Herz, 109 F Supp 2d 174, 187 [SD NY 2000, Leisure, J.] [“An attorney’s choice between a bench trial and jury trial is very much a strategic decision, one on which reasonable minds might differ”]). As Judge Leisure wisely observed, “[Where], as here, a defendant does not know at the time a jury trial must be demanded which judge will otherwise hear his case, it is impossible to say, looking forward, that one option is certain to produce a more favorable result than the other” (id. at 187 n 7). Plaintiff having advanced no authority to the contrary, this claim also is deficient.
Conclusion
Based on the foregoing, the motion for summary judgment is granted.

 The plaintiff has a self-insured retention of $250,000. The plaintiff does utilize a claims manager, GAB Robins North America, Inc., which received invoices and regular status reports from the defendant law firm (see opposition papers, exhibits 1-6). In addition, plaintiff and its affiliated companies have legal experts on staff, including disputed Stephen Tuttle, Esq., who attended the trial, and a legal support unit headed by one Neil Cawsey, albeit it claims settlement authority rested with the adjuster (opposing papers, exhibit 7, affirmation of Stephen Tuttle, Esq.). The risk manager appears to have had sole settlement authority and his affidavit does not dispute that the attorney assigned by the defendant law firm to try this case left numerous messages *154 regarding the settlement offer on the risk manager’s voice mail system (opposing papers, exhibit 9, affidavit of Sam D. Pipino). Plaintiffs witnesses are silent as to why the voice messages left by trial counsel Van Zwaren for the claims adjuster were not answered from June 19th through June 23rd.
Mr. Tuttle was in court while the trial was ongoing and reported to Mr. Cawsey. Neither deny personal awareness of plaintiffs willingness to settle; indeed, counsel for the personal injury plaintiff affirms that he personally conversed with Mr. Tuttle himself about such offer (motion, exhibit D). As to conversations with the adjuster, there is no denial of repeated notice and the executive risk manager’s expression of dissatisfaction regarding the effectiveness of communication through its own voice mail system would weigh in favor of modifying or discontinuing the voice mail system, not holding defendants legally accountable in malpractice for an attorney’s use of that system and following its directions.